E-FILED
Wednesday, 03 June, 2009  04:48:07 PM
Clerk, U.S. District Court, ILCD

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
SANGAMON COUNTY, ILLINOIS

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2009-CH-368 |
| ) | |
| SDS WEST CORPORATION, a California ) | |
| Foreign corporation not authorized to ) | |
| transact business in Illinois; ) | |
| ) | |
| BRUCE HOOD, individually and as Chief ) | |
| Operating Officer and director of SDS ) | |
| West Corporation; ) | |
| ) | |
| RAYMOND DORSO, individually and as ) | |
| Chief Executive Officer and director of ) | |
| SDS West Corporation; ) | |
| ) | |
| NATIONWIDE SUPPORT SERVICES, INC., ) | |
| a California foreign corporation not ) | |
| authorized to transact business in ) | |
| Illinois; and ) | |
| ) | |
| JOANNE GARNEAU, individually and as ) | |
| President of Nationwide Support ) | |
| Services, Inc.; ) | |
| ) | |
| Defendants. ) | |

FILED

MAY 2 7 2009   CIV.-9

*[signature]*   Clerk of the
Circuit Court

## NOTICE OF FILING NOTICE OF REMOVAL

TO:   Ms. Elizabeth Blackston
      Consumer Fraud Bureau, Chief
      500 South Second Street
      Springfield, IL  62706

      Ms. Rebecca Pruitt
      Assistant Attorney General
      Consumer Fraud Bureau
      500 South Second Street
      Springfield, IL  62706

EXHIBIT "A"

You are hereby notified that the Defendants, NATIONWIDE SUPPORT SERVICES, INC., a California foreign corporation, and JOANNE GARNEAU, Individually and as President of Nationwide Support Services, Inc., filed in the United States District Court for the Central District of Illinois, Springfield Division, a Notice of Removal of the Complaint filed by the Plaintiff in the Circuit Court of the Seventh Judicial Circuit of Illinois, Sangamon County, from the Circuit Court to the United States District Court for the Central District of Illinois, Springfield Division. A true and correct copy of the Notice is attached hereto.

You are hereby further notified that a copy of this Notice is being filed with the Clerk of the Circuit Court of Sangamon County to effect such removal to said District Court of the United States. In accord with 28 U.S.C. § 1446(e), the state court shall proceed no further unless this case is remanded by the United States District Court.

NATIONWIDE SUPPORT SERVICES, INC.,
a California foreign corporation, and JOANNE
GARNEAU, Individually and as President of
Nationwide Support Services, Inc.,
Defendants


BY: _____
HEYL, ROYSTER, VOELKER & ALLEN
Frederick P. Velde, ARDC #2893908
Gary S. Schwab, ARDC # 6180554

HEYL, ROYSTER, VOELKER & ALLEN
Suite 575, National City Center
1 North Old State Capitol Plaza
P.O. Box 1687
Springfield, Illinois 62705 1687
Telephone  217.522.8822
Facsimile  217.523.3902

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing instrument, was served upon the attorneys of all parties to the above cause by enclosing the same in an envelope addressed to such attorneys at their business address as disclosed by the pleadings of record herein, with postage fully prepaid, and by depositing said envelope in a U.S. Post Office Box in Springfield, Illinois, on May 27, 2009.

Ms. Elizabeth Blackston
Consumer Fraud Bureau, Chief
500 South Second Street
Springfield, IL  62706

Ms. Rebecca Pruitt
Assistant Attorney General
Consumer Fraud Bureau
500 South Second Street
Springfield, IL  62706

Mr. John R. Storino
Jenner & Block
330 N. Wabash Avenue
Chicago, IL 60611-7603

Mr. Matthew R. Devine
Jenner & Block
330 N. Wabash Avenue
Chicago, IL 60611-7603

_____
Gary S. Schwab

FPV:GSS:mh
G:\25\R7925\R7925PMI 002

3

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO: |
| | ) | |
| SDS WEST CORPORATION, a California Foreign corporation not authorized to transact business in Illinois; | ) ) ) | |
| | ) | |
| BRUCE HOOD, individually and as Chief Operating Officer and director of SDS West Corporation; | ) ) ) | |
| | ) | |
| RAYMOND DORSO, individually and as Chief Executive Officer and director of SDS West Corporation; | ) ) ) | |
| | ) | |
| NATIONWIDE SUPPORT SERVICES, INC., a California foreign corporation not authorized to transact business in Illinois; and | ) ) ) ) | |
| | ) | |
| JOANNE GARNEAU, individually and as President of Nationwide Support Services, Inc.; | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **NOTICE OF REMOVAL**

Defendants, NATIONWIDE SUPPORT SERVICES, INC., a California corporation, and JOANNE GARNEAU, Individually and as President of Nationwide Support Services, Inc., pursuant to 28 USC § 1441(a) and § 1446, hereby remove to this Court the state court action described below, and state:

1.      On May 4, 2009, the Attorney General of the State of Illinois on behalf of the Plaintiff, People of the State of Illinois, commenced the above-entitled action bearing case

number 2009-CH-368 in the Circuit Court of the Seventh Judicial Circuit of Illinois, Sangamon County.

2.     On May 20, 2009, NATIONWIDE SUPPORT SERVICES, INC., a California corporation, and JOANNE GARNEAU, individually and as President of Nationwide Support Services, Inc., were served with a copy of the Summons and Complaint.  They have not yet filed an Answer or responsive pleading to the Complaint.

3.     This Notice is filed with this Court within 30 days after receipt by the above-named Defendants of the Complaint in the above-entitled action.

4.     This is a civil action over which this Court has diversity jurisdiction pursuant to 28 USC § 1332 and is removable pursuant to 28 USC § 1441(a).

5.     Plaintiff is a citizen of the State of Illinois, acting parens patraie on behalf of the citizens of the State of Illinois.  Defendant, NATIONWIDE SUPPORT SERVICES, INC., is a California corporation with its principal place of business in Newport Beach, California.  JOANNE GARNEAU is a citizen of the State of California.   The corporate defendants are out of state corporations and the individual defendants are non-residents of the State of Illinois.

6.     The factual allegations set forth in the Complaint establish that the amount in controversy exceeds the minimal jurisdictional amount of $75,000, exclusive of interest and costs.   As a result, the state court action satisfies the jurisdictional requirements set forth in 28 U.S.C. § 1332(a) as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

7.     Under 28 U.S.C. § 1446(a) and 28 U.S.C. § 1391(a) and (b), venue of this action is proper in this Court as the district and division within which the state court action was brought.

8.      Defendants are providing written notice of the filing of this Notice of Removal to plaintiff and are filing a copy of this Notice of Removal with the Clerk of Court for the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois, pursuant to 28 U.S.C. § 1446(d).

9.      In accordance with 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders filed in the state court action are attached hereto as Exhibit A.

10.      All Defendants consent to this removal.

11.      This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

WHEREFORE, Defendants, NATIONWIDE SUPPORT SERVICES, INC., a California corporation, and JOANNE GARNEAU, Individually and as President of Nationwide Support Services, Inc., pray that the above-entitled action be removed from the Circuit Court of the Seventh Judicial Circuit of the State of Illinois, Sangamon County, to this Court.

NATIONWIDE SUPPORT SERVICES, INC.,
a California foreign corporation, and JOANNE
GARNEAU, Individually and as President of
Nationwide Support Services, Inc.,
Defendants


s/ Gary S. Schwab
Frederick P. Velde, ARDC #2893908
Gary S. Schwab, ARDC # 6180554
HEYL, ROYSTER, VOELKER & ALLEN
Suite 575, National City Center
1 North Old State Capitol Plaza
P.O. Box 1687
Springfield, Illinois 62705 1687
Telephone  217.522.8822
Facsimile  217.523.3902

PROOF OF SERVICE

THE UNDERSIGNED certifies that on May 27, 2009, I submitted the foregoing NOTICE OF

REMOVAL by e-mail to the Clerk of the Court for filing and uploading to the CM/ECF system;

and I hereby certify that I have mailed the document to the following by United States Postal

Service:

Ms. Elizabeth Blackston
Consumer Fraud Bureau, Chief
500 South Second Street
Springfield, IL  62706

Ms. Rebecca Pruitt
Assistant Attorney General
Consumer Fraud Bureau
500 South Second Street
Springfield, IL  62706

Mr. John R. Storino
Jenner & Block
330 N. Wabash Avenue
Chicago, IL 60611-7603

Mr. Matthew R. Devine
Jenner & Block
330 N. Wabash Avenue
Chicago, IL 60611-7603

s/ Gary S. Schwab
Gary S. Schwab, ARDC # 6180554
HEYL, ROYSTER, VOELKER & ALLEN
Suite 575, National City Center
One North Old State Capitol Plaza
P.O. Box 1687
Springfield, IL  62705-1687
Telephone:  217.522.8822
Facsimile:  217.523.3902

FPV:GSS:mh
G:\25\R7925\R7925PMI 001

4

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
SANGAMON COUNTY

THE PEOPLE OF THE STATE OF ILLINOIS, )
)
)
Plaintiff, )
)
-vs- )
)
SDS WEST CORPORATION, a California foreign corporation )
not authorized to transact business in Illinois; )
)
BRUCE HOOD, individually and as Chief Operating Officer )
and director of SDS West Corporation; )
)
RAYMOND DORSO, individually and as Chief Executive Officer )
and director of SDS West Corporation; )
)
NATIONWIDE SUPPORT SERVICES, INC., a California )
foreign corporation not authorized to transact business )
in Illinois; and )
)
JOANNE GARNEAU, individually and as President of )
Nationwide Support Services, Inc.; )
)
)
Defendants. )
)

NO. 09CH368

**FILED**

MAY 0 4 2009  **CIV.-3**

*[signature]*  **Clerk of the Circuit Court**

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

NOW COMES the plaintiff, THE PEOPLE OF THE STATE OF ILLINOIS, by LISA MADIGAN,

Attorney General of the State of Illinois, and brings this action complaining of defendants, SDS WEST

CORPORATION, a California foreign corporation not authorized to transact business in Illinois, BRUCE

HOOD, individually and as Chief Operating Officer and director of SDS West Corporation, RAYMOND

DORSO, individually and as Chief Executive Officer  and director of SDS West Corporation,

NATIONWIDE SUPPORT SERVICES, INC.,  a California foreign corporation not authorized to transact

Page 1 of  15

Exhibit "A"

business in Illinois, and JOANNE GARNEAU, individually and as President of Nationwide Support

Services, Inc., and states as follows:

## JURISDICTION AND VENUE

1.      This action is brought for and on behalf of THE PEOPLE OF THE STATE OF ILLINOIS,

by LISA MADIGAN, Attorney General of the State of Illinois, pursuant to the provisions of the Consumer

Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.), and her common law authority as

Attorney General to represent the People of the State of Illinois.

2.      Venue for this action properly lies in Sangamon County, Illinois, pursuant to section 2-101

of the Illinois Code of Civil Procedure (735 ILCS 5/2-101), in that the defendants, SDS WEST

CORPORATION AND NATIONWIDE SUPPORT SERVICES, INC., are out-of-state corporations, and the

individual defendants Bruce Hood, Raymond Dorso, and Joanne Garneau are nonresidents of Illinois.

## PARTIES

Plaintiff, THE PEOPLE OF THE STATE OF ILLINOIS, by LISA MADIGAN, Attorney General of

the State of Illinois, is charged, *inter alia*, with the enforcement of the Consumer Fraud and Deceptive

Business Practices Act (815 ILCS 505/1 et seq.)).

3.      Defendant SDS WEST CORPORATION is a California foreign corporation not authorized

to transact business in Illinois with its principal place of business at 65 Enterprise, Aliso Viejo, CA 92656.

4.      Defendant NATIONWIDE SUPPORT SERVICES, INC. is a California foreign corporation

not authorized to transact business in Illinois with its principal place of business at 19500 Jamboree Rd.,

Irvine, CA 92612.

5.      For purposes of this Complaint for Injunctive and Other Relief, any references to the acts

and practices of defendants SDS WEST CORPORATION and NATIONWIDE SUPPORT SERVICES, INC.

shall mean that such acts and practices are by and through the acts of said corporation's officers, owners,

directors, employees, or other agents.

6.      The defendant, BRUCE HOOD, is sued individually and in his capacity as Chief Operating

Officer and director of SDS WEST CORPORATION.

7.      The defendant, BRUCE HOOD, formulated, directed, controlled and had knowledge of

-2-

the acts and practices of the defendant, SDS WEST CORPORATION, and, at all times relevant hereto, was

Chief Operating Officer and director of the defendant SDS WEST CORPORATION.

8.      To adhere to the fiction of separate corporate existence between the defendant, BRUCE

HOOD and SDS WEST CORPORATION, would serve to sanction fraud and promote injustice.

9.      The defendant, RAYMOND DORSO, is sued individually and in his capacity as Chief

Executive Officer and director of SDS WEST CORPORATION.

10.      The defendant, RAYMOND DORSO, formulated, directed, controlled and had knowledge

of the acts and practices of the defendant, SDS WEST CORPORATION, and, at all times relevant hereto,

was Chief Executive Officer and director of the defendant SDS WEST CORPORATION.

11.      To adhere to the fiction of separate corporate existence between the defendant,

RAYMOND DORSO and SDS WEST CORPORATION, would serve to sanction fraud and promote

injustice.

12.      The defendant, JOANNE GARNEAU, is sued individually and in her capacity as President

of NATIONWIDE SUPPORT SERVICES, INC.

13.      The defendant, JOANNE GARNEAU, formulated, directed, controlled and had knowledge

of the acts and practices of the defendant, NATIONWIDE SUPPORT SERVICES, INC., and, at all times

relevant hereto, was President of the defendant NATIONWIDE SUPPORT SERVICES, INC.

14.      To adhere to the fiction of separate corporate existence between the defendant, JOANNE

GARNEAU and NATIONWIDE SUPPORT SERVICES, INC, would serve to sanction fraud and promote

injustice.

**COMMERCE**

15.      Subsection 1(f) of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS

505/1(f)), defines "trade" and "commerce" as follows:

> The terms 'trade' and 'commerce' mean the advertising, offering for sale,
> sale, or distribution of any   services and any property, tangible or
> intangible, real, personal, or mixed, and any other article, commodity, or
> thing of value wherever situated, and shall include any trade or
> commerce directly or indirectly affecting the people of this State.

16.      The defendants were at all times relevant hereto, engaged in trade and commerce

-3-

in the State of Illinois, to-wit: advertising, offering for sale, selling and accepting money for "debt settlement" or "debt mediation" services to financially distressed consumers in Illinois and in other states.

17.     The defendants work in concert to solicit consumers nationally, including Illinois consumers, who are struggling with high amounts of unsecured debt, to purchase the defendants' debt settlement or debt mediation service.

18.     Defendant SDS West performs the "front-end" marketing and sales of debt settlement services to consumers, obtains executed agreements for same, and then refers consumers to Nationwide for the so-called debt settlement services.

### DEFENDANTS' COURSE OF CONDUCT

#### A. Defendant SDS West's Business Practices

19.     Since at least 2006, and continuing thereafter, SDS West purported to advertise and offer "debt settlement" or "debt mediation" services to financially distressed consumers in Illinois and other states.

20.     SDS West directly markets its debt settlement services over the Internet at www.sdswest.com and, upon information and belief, through direct mail solicitation. Examples of SDS West's advertisements on the website are attached hereto as Exhibit A.

21.     SDS West's website states as follows: "Pay as little as 50% of what you owe and become debt free in as little as 36 months. No other debt Mediation program can help you pay less and become debt free faster than ours, find out for yourself."

22.     In describing "debt mediation" on the website, SDS West further states, "Debt mediation has become the quickest, most cost effective, solution to becoming debt-free. Our debt mediation program can help you reduce your current debt by as much as 75% while shaving years off your payments." And further, "Filing for bankruptcy should be a last resort. We encourage our clients to explore all other debt remedies before they consider filing for bankruptcy as it severely damages your credit. That is why we recommend debt Mediation. Not only will it save you money but it will improve your credit rating."

-4-

23.    In the FAQ section of defendants' website, defendants state, " Once you join our debt Mediation program your creditors will no longer bother you. We will handle all collection efforts and concerns so you can stop worrying about them."

24.    Consumers are invited to call a toll free number, 1-888-567-1406 or send an e-mail for further information.

25.    When consumers telephone SDS West or SDS West's agents, they represent that SDS West uses expert "debt mediators" and that SDS West can drastically reduce consumers' unsecured credit card debts in a very short time through a "debt mediation" program.  Specifically, SDS West and its agents represent that, through SDS West's program: (a) consumers will be able to reduce their debts by approximately 50 percent; (b) consumers will be completely debt free in as little as 12 to 36 months; and (c ) consumers will be able to pay off their creditors and avoid bankruptcy.

26.    SDS West's agents represent that SDS West is able to accomplish such dramatic results through their "team of mediators that have worked with over 18,000 clients and handle 200 million in debt..." SDS West and their agents tell consumers that SDS West will contact consumers' creditors and negotiate  substantially reduced settlements of the amounts owed to each creditor.

27.    SDS West also represents to consumers that at the end of the program SDS West will review the consumer's credit report, and if necessary refer the consumer to its affiliate, Lexington Law, the "largest credit repair organization on planet earth."

28.    SDS West represents that Lexington Law will work with the credit bureaus so that at the end of the program consumers' accounts will show paid with a zero balance or it will appear that the consumer never had the accounts at all.

29.    Upon information and belief, SDS West's fees and cancellation policies are not disclosed on the website or on initial inbound calls to SDS West.

30.    Consumers who want to move forward with the defendants' debt settlement program are asked by SDS West and its agents to make a list of their creditors, the account

-5-

numbers, and balances and forward the list to SDS West.

31.     SDS West represents that consumers' list of creditors must be taken to underwriters for approval, and that following approval consumers will receive a call back to go over the exact numbers.

32.     Consumers are asked to sign a "Debt Settlement Agreement" and return it to SDS West. A copy of SDS West's Debt Settlement Agreement is attached hereto as Exhibit B.

33.     Once SDS West receives a signed agreement from a consumer, SDS West forwards the agreement and all information related to the consumer to Nationwide for servicing, even though sales contracts are ostensibly between the consumer and SDS West. Nationwide provides the so-called "back-end" service, which includes, among other things, negotiating settlements with consumers's creditors, providing customer service, and administering customer accounts.

34.     Upon information and belief, following Nationwide's receipt of the "Debt Settlement Agreement" from SDS West, Nationwide sends consumers a "Welcome Package" that includes the information about the program. A copy of defendants "Welcome Package" is attached hereto as Exhibit C.

35.     The "Welcome Package" fails to clearly and conspicuously disclose that debt settlement services will be provided by Nationwide and instead carries the SDS West name and logo on its cover sheet.

### B. Fees for Defendants' Service

36.     SDS West charges consumers a nonrefundable fee.  SDS West's fee is expressed as a percentage of the amount the consumer owes his unsecured creditors at the beginning of the program.  Upon information and belief this fee is now 15% of the consumer's total debt.

37.     SDS West also charges consumers a monthly maintenance fee of approximately $50.00.

38.     SDS West requires consumers to make a substantial down payment toward the 15% fee within the first two to three months.  The down payment is typically 30% to 40% of the total fee. Consumers pay the remainder of SDS West's fee in monthly installments over the course of the

next six to twelve months. SDS West typically requires consumers to pay the fee by automatic withdrawal from the consumer's checking or savings account.

39.   Defendants also charge consumers a monthly fee that goes to a third party payment processor who sets up an escrow account that holds consumers' money until defendants make a settlement offer to consumers' creditors.

## C.  Relationship Between SDS West and Nationwide

40.   SDS West has a contract with Nationwide to provide debt settlement and account management services to consumers who enter into agreements with SDS West.

41.   Nationwide is a for-profit corporation that provides "back-office" support to "debt settlement" marketing organizations.

42.   Virtually all of the key functions that SDS West claims to perform are actually performed by Nationwide.

43.   SDS West performs the marketing functions designed to enroll consumers in a debt settlement program.

44.   Upon information and belief, Nationwide is responsible for negotiating the settlements with consumers' creditors.

45.   If a consumer signs up for defendants' program, the defendants require the consumer to provide defendants with authorization to debit the consumers' bank account on a monthly basis by automatic bank draft. The defendants and their agents instruct consumers that their monthly payments, less any fees, will be placed into an escrow or trust account with NoteWorld, a third party payment processor.

46.   Each monthly automatic draft also includes fees to defendants and NoteWorld, the third party payment processor.

47.   When consumers sign up for defendants' program, the defendants and their agents, expressly or by implication, instruct the consumer to stop making any payments to his or her creditors, even if the consumer has been making timely payments to his creditors.

48.   The defendants charge extraordinary up front fees for their so-called "debt

-7-

settlement" or "debt mediation services." Specifically, as their "debt settlement" fee, the defendants typically charge 15% of the consumers' total unsecured debt in the program. Thus for a consumer with $50,000 in unsecured debt, the defendants' fee could easily be as much as $7,500.

49.     Before the defendants will commence any so called "debt settlement " or "debt mediation" with a consumer's creditors, the defendants require that consumers pay a substantial portion of the defendants' fees first. Consumers report that they did not understand this. Upon information and belief, in soliciting consumers to enter the program, the defendants and their agents do not explain to consumers that, at least for several months, most, if not all, of the consumers' monthly payment is devoted solely to defendants' and their agents' fees. As a result, because the defendants collect their fees up-front, a consumer must remain in the defendants' program for often a year or more before any debt negotiation services are performed, if any are performed at all.

50.     As described below, participation in defendants' program does not produce the positive results that consumers expect at the time they enroll.

51.     Nationwide does not commence settlement negotiations immediately. To the extent that Nationwide initiates negotiations with any of consumers' creditors, they usually do not begin doing so until after the consumer has made the required down payment on defendants' fees, which is at least two to three months after the consumer has entered defendants' program and has ceased making payments to his creditors.

52.     Nationwide rarely, if ever, negotiates settlements with all of a consumers' creditors. In fact, defendants fail to negotiate substantial reductions of debt on most of the consumers' accounts. Even when Nationwide succeeds in negotiating a settlement on one of a consumers' several accounts, the amount the client is required to pay under the settlement is often significantly higher than 40% to 60% of the amount the consumers owed to the creditor at the time the consumer enrolled in the program due to added fees and interest as a result of non-payment while in the program.

53.     Participation in defendants' program does little to abate or prevent calls from

-8-

creditors.

54.   In numerous instances, after consumers who enroll in defendants' program have ceased making payments and defendants have failed to contact the consumers' creditors to offer a settlement, consumers are sued by one or more of their creditors or by one or more debt collection agencies attempting to collect on their accounts. Defendants do not provide legal representation to Illinois consumers when they are sued.

55.   Upon information and belief, several Illinois consumers who entered defendants' program have been sued by their creditors.

56.   Upon information and belief, defendants instruct consumers to immediately fax any summons or arbitration notice they receive to defendants.   Consumers are told defendants' legal resources department will contact them within 48 hours and walk them through the necessary response needed.

57.   Upon information and belief, defendants send consumers a "Summons Response Packet" and "Motion to Compel Arbitration Packet." Defendants state the following, "In many instances we will be able to negotiate with your creditor on your behalf while you are at the courthouse." A copy of defendants' "Summons Response Packet" and "Motion to Compel Arbitration Packet" are attached hereto as Exhibits D and E.

58.   As a result of not making their minimum monthly payments to their creditors, additional interest accrues on the consumers' outstanding balances, interest rates may increase, late charges are assessed, and other fees may be imposed.

59.   In many cases, consumers who enroll in defendants' program suffer a substantial negative impact to their credit ratings as a result of ceasing to pay creditors.

60.   Many consumers who have retained defendants' services for the purpose of improving their financial situation realize their financial situation is not improving but instead is getting worse and cancel or drop out after they have paid most or all of their fees to defendants, but before the defendants perform any debt settlement or debt mediation services. By this time most consumers find that the balances on the accounts they trusted defendants to settle have increased

-9-

substantially as a result of penalties, fees, interest and other charges.

61.     Many consumers who have retained defendants' services for the purpose of improving their financial situation have experienced such a substantial increase in their debt that they have filed for protection under the bankruptcy laws.

62.     Based on information and belief, defendants have collected large amounts of fees from hundreds of Illinois consumers. Between 2006 and 2007 SDS West enrolled at least 250 Illinois consumers in its debt settlement program.

63.     Upon information and belief a significant number of Illinois consumers have cancelled or dropped out of defendants' program after paying significant fees to defendants but before the defendants settle any debts.

64.     Once defendants' fees are paid, they are not refundable according to the terms of defendants' agreement.

65.     More specifically, but not by way of limitation, the following allegations are pled as illustrations of unlawful business practices of defendants and are not meant to be exhaustive. The State reserves the right to prove that other consumers have been injured as a result of said unlawful practices:

*John and Barbara D.*

66.     In March 2006, John and Barbara D. enrolled in defendants' debt settlement program. At the time, they enrolled 5 credit card accounts with a total of approximately $43,908.00 in debt.

67.     Defendants began making monthly payments of $648.00. For the first three months, all of consumers' monthly payment went to fees. For the next 13 months, approximately $373, or all but approximately $275.00 went to fees. Thus, by June 2007, after paying a total of approximately $9,820 for the first 15 months, consumers had approximately $3,575 in reserves that could be used to settle their $43,908 debt.

68.     In an attempt to resolve their more quickly than possible through defendants' program, John and Barbara D. borrowed $14,000 in May 2007 and sent it to defendants to be

-10-

placed in reserves for settlement.

69.    In January 2007 and June 2007 John and Barbara D. were sued by creditors. Both times they followed defendants' instructions and filed an answer and motion to compel arbitration. Due to legal action, the consumers missed days of work and were responsible for various court costs.

70.    During the time consumers were enrolled in defendants program their debt grew from approximately $43,908 to $55,495.

71.    Approximately 20 months after enrolling in defendants program, consumers had settled with all five of their creditors. Consumers paid approximately $35,715 to settle their original debt of $43, 908, a saving of approximately $8, 193 or approximately 18%, far less than the 50% represented by defendants. Moreover, this would not have been possible had the consumers not made a substantial onetime payment of $14,000 to the defendants.

72.    In this case, consumers paid defendants approximately $6,848 in fees to achieve a savings of approximately $8,193. In addition, consumers missed work to attend court and paid court costs when sued by their creditors.

### APPLICABLE STATUTE

### CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

73.    Section 2 of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2), provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

### VIOLATIONS

74.    The defendants have engaged in a course of trade or commerce which constitutes

-11-

unfair and deceptive acts or practices declared unlawful under section 2 of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2), by in connection with the advertising, offering for sale, selling and accepting money for debt settlement services:

      a.     representing, expressly or by implication, that by enrolling in defendants' debt settlement program consumers will be able to pay off their credit card and other unsecured debts for a substantially reduced amount, such as 40 to 60 percent of the total amount owed to creditors, when in fact very few consumers successfully complete defendants' program;

      b.     representing, expressly or by implication, that any negative information that appears on a consumer's credit report as result of participating in defendants' program will be removed upon completion of the program when in fact it will remain on a consumer's credit report for several years;

      c.     representing, expressly or by implication, that consumers who enroll in defendants' program will be able to avoid bankruptcy, when in fact the defendants' program almost always fails, causing many consumers to file for bankruptcy protection;

      d.     representing, expressly or by implication, that defendants' debt settlement program is the best option for debt relief, without any basis for such representation and when in fact other options such as credit counseling, debt management, bankruptcy filing or other options are far more suitable for many consumers;

      e.     representing , expressly or by implication, that defendants have special expertise in "debt settlement" or "debt negotiation," when in fact the defendants have no special expertise, and consumers are just as likely to obtain reduced settlements with creditors through their own efforts;

      f.     failing to disclose clearly and conspicuously to consumers the material terms and conditions of defendants' offer,  such as the amount of defendants' fees;

      g.     failing to disclose to clearly and conspicuously to consumers the material fact that defendants collect a substantial amount of their fees "up-front" before beginning any debt settlement services on behalf of consumers;

h.     failing to disclose clearly and conspicuously to consumers that when consumers stop paying their creditors, there is a substantial likelihood that one or more of their creditors will sue the consumer;

i.     failing to disclose to consumers that when consumers stop paying their creditors, the balances on their credit accounts will increase as a result of interest accruing on their accounts, increases to their interest rate, and the imposition of late fees and other charges;

j.     failing to disclose to consumers the material fact that some creditors refuse to negotiate with defendants; and

k.     representing, expressly or by implication, that defendants' business practices are legal, when in fact the Illinois Department of Financial and Professional Regulation issued a cease and desist order to defendant SDS West Corporation on January 11, 2008. A copy of IDFPR's order is attached hereto as Exhibit F.

## REMEDIES

75.    Section 7 of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/7), provides:

> Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by the Act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the State against such person to restrain by preliminary or permanent injunction the use of such method, act or practice. The Court, in its discretion, may exercise all powers necessary, including but not limited to: injunction, revocation, forfeiture or suspension of any license, charter, franchise, certificate or other evidence of authority of any person to do business in this State; appointment of a receiver; dissolution of domestic corporations or association suspension or termination of the right of foreign corporations or associations to do business in this State; and restitution.

> In addition to the remedies provided herein, the Attorney General may request and this Court may impose a civil penalty in a sum not to exceed $50,000 against any person found by the Court to have engaged in any method, act or practice declared unlawful under this Act. In the event the court finds the method, act or practice to have been entered into with intent to defraud, the court has the authority to impose a civil penalty in a sum not to exceed $50,000 per violation.

> In addition to any other civil penalty provided in this Section, if a person is found by the court to have engaged in any method, act, or practice declared unlawful under this Act, and the violation was committed against a person 65 years of age or older, the court may impose an additional civil penalty not to exceed $10,000 for each violation.

76. Section 10 of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/10), provides:

> In any action brought under the provisions of this Act, the Attorney General is entitled to recover costs for the use of this State.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays that this honorable Court enter an Order:

A.    Finding that the defendants have violated section 2 of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2); including, but not limited to, the unlawful acts and practices alleged herein;

B.    Preliminarily and permanently enjoining the defendants from engaging in the business of advertising, offering for sale, selling and accepting money for "debt settlement" or "debt mediation" services in the State of Illinois;

C.    Declaring that all contracts entered into between the defendants and Illinois consumers by the use of methods and practices declared unlawful are rescinded and requiring that full restitution be made to said consumers;

D.    Assessing a civil penalty in the amount of Fifty Thousand Dollars ($50,000) per violation of the Act found by the Court to have been committed by the defendants with the intent defraud; if the Court finds the defendants have engaged in methods, acts or practices declared unlawful by the Act, without the intent to defraud, then assessing a statutory civil penalty of Fifty Thousand Dollars ($50,000), all as provided in section 7 of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/7);

E.    Assessing an additional civil penalty in the amount of Ten Thousand Dollars ($10,000) per violation of the Consumer Fraud and Deceptive Business Practices Act found by the Court to have been committed by the defendants against a person 65 years of age and older as provided in section 7(c) of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/7(c);

-14-

F.     Requiring the defendants to pay all costs for the prosecution and investigation of this action, as provided by section 10 of the Consumer Fraud and Deceptive Business Practices Act ( 815 ILCS 505/10); and

G.     Providing such other and further equitable relief as justice and equity may require.


Respectfully submitted,


THE PEOPLE OF THE STATE OF
ILLINOIS, by LISA MADIGAN
ATTORNEY GENERAL OF ILLINOIS


_Elizabeth Blackston_
Elizabeth Blackston
Consumer Fraud Bureau, Chief

_Rebecca L. Pruitt_
Rebecca Pruitt (ARDC #6209774)
Assistant Attorney General
Consumer Fraud Bureau
500 South Second Street
Springfield, IL 62706
Telephone:  (217) 782-4436

-15-





The Superior Debt Solution

March 16, 2009

HOME | ABOUT | FREE REVIEW | N | CONTACT | MORE INFO

## WELCOME TO SDS WEST CORPORATION

**Pay as little as 50% of what you owe and become debt-free in as little as 36 months.**

**Our debt mediation program can help you pay less and become debt-free fast, find out for yourself.**

No other debt Mediation program can help you pay less and become debt-free faster than ours, find out for yourself. Click here for a free debt review.

**Approved Affiliates**



© 2000 SDSWest.com    privacy | legal



PLAINTIFF'S
EXHIBIT A
Page 1 of 4



**The Superior Debt Solution**

March 16, 2009



HOME | ABOUT | FREE REVIEW | FAQ | CONTACT | MORE INFO



# ABOUT

**Debt Mediation**

One of the most difficult parts of being in debt is trying to find a way out. Making minimum monthly payments becomes a never-ending cycle and it only puts you deeper into debt. Unfortunately, this helpless feeling is a problem for so many Americans. With SDS West's debt Mediation program a debt specialist negotiates with your creditors to help you gain control of your finances and start living the life you deserve.

Debt Mediation has become the quickest, most cost-effective, solution to becoming debt-free. Our debt Mediation program can help you reduce your current debt by as much as 75% while shaving years off your payments. Since your debt balances will be lower and more manageable you have the opportunity to pay off your debt faster with lower payments. With our program it is possible to become debt-free within three years; a thought that is inconceivable to many.

Many people, during periods of financial hardship, turn to bankruptcy to solve their debt problems. Filing for bankruptcy should be a last resort. We encourage our clients to explore all other debt relief remedies before they consider filing for bankruptcy as it severely damages your credit. That is why we recommend debt Mediation. Not only will it save you money but it will also improve your credit rating.

At SDS West Corp we take pride in focusing on our clients' personal and financial situations. We take into consideration factors such as total debt, personal income, and living expenses to determine what the best course of action is for each of our clients. This close relationship ensures our clients that they are making the right decision when it comes to their finances.

To find out if debt Mediation is right for you, fill out our FREE, no-obligation, **online form** and get started on your new debt-free life!

© 2000 SDSWest.com     privacy | legal

PLAINTIFF'S
EXHIBIT A
Page 2 of 4

http://www.sdswest.com/about/index.asp

3/16/2009



**The Superior Debt Solution**

March 16, 2009

HOME | ABOUT | FREE REVIEW | FAQ | CONTACT | MORE INFO



# FAQ

- How long will it take me to get rid of my debt?
- Can debt Mediation be used for any kind of debt?
- Why should I choose debt Mediation over bankruptcy?
- Would my credit be affected by a debt Mediation program?
- Will my creditors still contact me if I'm involved in a debt Mediation program?
- How is debt Mediation different from Debt Consolidation and Consumer Credit Counseling?

**How long will it take me to get rid of my debt?**

The amount of time it takes to settle all of your debts depends on the amount you owe, your income, and your living expenses. Usually, with our program, our clients can become debt-free in three years.

Click Here for a FREE consultation and learn how much money this service can save you.

back to top^

**Can debt Mediation be used for any kind of debt?**

Debt Mediation can only be used to settle unsecured debt. Unsecured debt generally consists of credit cards, unsecured personal loans, and uncollected judgements. You cannot use debt Mediation with IRS Debt, Student Loans, or secured loans such as home and auto loans.

Click Here for a FREE consultation and learn how much money this service can save you.

back to top^

**Why should I choose debt Mediation over bankruptcy?**

Filing for bankruptcy should be a last resort to solve your financial problems. Many think that bankruptcy is their only way out when, in fact, thereare other alternatives. Filing for bankruptcy severely damages your credit and should only be used after all other debt relief remedies have been explored.

Click Here for a FREE consultation and learn how much money this service can save you.

back to top^

**Would my credit be affected by a debt Mediation program?**

A couple of factors come into play here. First, when you make payments on your debt, your creditors can report the debt simply as "paid" or "paid – negotiated." In this case, your credit is not affected.

On the other hand, if you have been behind on your bills because you can't afford to make your monthly payments, this will appear on your credit report. The key to having good credit is to make your monthly payments and get out of debt. Once you are debt-free you can restore your credit to good standing.

Click Here for a FREE consultation and learn how much money this service can save you.

back to top^

**Will my creditors still contact me if I'm involved in a debt Mediation program?**

Once you join our debt Mediation program your creditors will no longer bother you. We will handle all collection efforts and concerns so you can stop worrying about them.

Click Here for a FREE consultation and learn how much money this service can save you.

**How is debt Mediation different from Debt Consolidation and Consumer Credit Counseling?**

PLAINTIFF'S
EXHIBIT A
Page 3 of 4

Under our debt Mediation program, we will negotiate with your creditors to significantly lower your total debt which is usually between 50 and 75% of your outstanding balances. This will save you money on your debt principal and interest which will allow you to pay off your debt faster.

Debt Consolidation involves pursuing a new loan to pay off all your existing debts. With debt consolidation, although you may have low monthly payments, you are still responsible for paying all your existing debts. With debt Mediation you typically pay only 50-75% of your outstanding debt balances.

A Consumer Credit Counseling Service will lower your monthly payments but they will also extend your term. You end up paying the same or more than the original debt. Typically with a Consumer Credit Counseling Service the program lasts about eight years as opposed to debt Mediation which only lasts about three years.

**Click Here for a FREE consultation and learn how much money this service can save you.**

back to top^

© 2000 SDSWest.com     privacy | legal

PLAINTIFF'S
EXHIBIT A

Page 4 of 4

3/16/2009



**The Superior Debt Solution**

## DEBT SETTLEMENT AGREEMENT

This debt settlement agreement ("Agreement") is made this ____/____ day of _March_ 200 _6_ between **SDS West Corporation,** located at 65 **Enterprise,** Aliso Viejo, **CA** 92656, and ▓▓▓▓▓▓▓▓▓▓▓▓▓ , ("Client"). The parties agree as follows:

1. Services. SDS West Corporation (herein referred to as SDS) agrees to provide debt settlement and restructure services to Client under the terms and conditions of this Agreement (the "Service"). This Service consists of negotiating with creditors on behalf of Client for reduction of unsecured debt and formulation of a payment plan. SDS will use its best efforts to settle the Program Debt, as defined below. SDS will timely respond to all Client inquiries. SDS will keep confidential and not disclose to any third party the personal financial information provided by Client.

On acceptance of Client into the program, SDS will provide a "Welcome Packet" containing a Schedule of Program Debt, a Payment Schedule, a Fund Transfer Schedule, along with further information about the program.

2. Client Obligations. Client accepts the following obligations:

(a) Client shall inform SDS of any additional debtor, co-signer or guarantor of any of Program Debt. Client is responsible for notifying such additional debtor, co-signer or guarantor.

(b) Client will provide a written list of all unsecured debts that he or she wants SDS to settle and restructure. SDS has the right in its sole discretion to exclude certain debts, and will consult with Client to develop a mutually agreeable list of debts (the "Program Debt"). A Schedule of Program Debt is incorporated into this contract by reference. This Schedule will contain the name of the creditor, account number and outstanding balance. Debts added to the Program Debt after signing this Agreement will be subject to additional fees. All information provided by Client must be truthful and accurate; SDS is under no obligation to verify information supplied by Client, but may do so at its sole discretion;

(c) Client will forward all correspondence from creditors to SDS, including collection letters. If creditors telephone Client, Client will refer them to SDS. Client will not discuss his or her financial situation with creditors or discuss settlement. If the creditor continues to make contact, Client will contact SDS and provide creditor's name, telephone number and name of contact person;

(d) Client will timely respond to all calls and requests for documentation from SDS and will promptly advise SDS of any change in address or telephone number;

(e) Client will follow the terms of the 'Funds Transfer Schedule' setting aside funds required for fees, settlement reserves and NoteWorld trust account maintenance. All monies authorized will be drafted by NoteWorld. Approximately 55%-68% of those funds will go towards program debt fees and settlement reserves. The remaining funds are itemized fees for services provided by SDS and a monthly maintenance fee for your trust account. The number of months that funds are to be set aside and the amount to be set aside each month will be determined by SDS from the information contained on the Schedule of Program Debt. The Payment Schedule, which documents the results, is incorporated into this Agreement by reference. The monies set aside are to be used for Program Debt payment until the Program Debt is settled or upon termination.

(f) **Client shall make no further charges to any account listed on the Schedule of Program Debt.** Client will not continue to incur debt or open new charge accounts, except that Client may retain and use one charge card for emergency purposes only. Client will immediately inform SDS of such emergency use. This account shall not be included in the SDS program.

(g) Client will not refinance any real or personal property, except for the sole purposes of lowering interest rate or obtaining funds to settle a debt. Client will inform SDS of his or her intent to refinance prior to doing so.

PLAINTIFF'S
EXHIBIT B
Page 1 of 5

tabbies



The Superior Debt Solution

3. Compensation. In consideration for the Service provided by SDS West, Client shall pay to SDS West a Service Fee equal to 15% of the Program Debt. Approximately 5% to 15% of the estimated settlement amount, including the Service Fee will be paid upon acceptance into the program. The percentage varies based on types of creditors enrolled into the program and is in accordance with the payment schedule provided. All Service Fees owed to SDS West will be paid as defined in the Payment Schedule. **Client agrees that he or she will not make or request changes to the Funds Transfer Schedule for the first 90 days following commencement of Client's participation in the program or the first three payments, whichever comes first.** Client shall not instruct the bank holding any account from which NoteWorld is authorized to withdraw funds to refuse payment or to demand reimbursement without the express written concurrence of SDS West. Any such instruction is a material breach of this agreement and is grounds for immediate termination. The Payment Schedule will specify the amount of the monthly service fees to SDS West, settlement reserves and trust account maintenance payment. Client authorizes NoteWorld to initiate debit of Client's checking or savings account, in accordance with the Electronic Payment Authorization, for the payment of the Service Fees, Settlement reserves and Trust account maintenance. The Electronic Payment Authorization is incorporated by reference into this Agreement. **Once the fee is paid, it is not refundable.** SDS West will accept no more than two insufficient funds (NSFs) or payment reschedules in any 12-month period after the first 90 days; excessive NSFs or payment reschedules are grounds for termination. There is a minimum of $25 fee for each NSF and/or bank charge fees for NSF. There is also a $25 fee for payment reschedule. **No payment reschedule shall be authorized within 5 days of the payment date.** If a client removes an account from the program before fees are paid in full, 7% of the fee for the account removed will be credited to Clients remaining program fees. If Client removes an account after fees have been paid in full, no credit will be applied.

4. Settlement Process. At such time as SDS has received the first payment, SDS will commence the Service. SDS will advise Client of all good faith offers made by creditors and debt collectors, and of their acceptance of any offers made by SDS. SDS will not settle any account without the approval of Client, who has absolute discretion to accept or reject any settlement offer. On Client's approval of the settlement of a particular creditor account, SDS will notify NoteWorld to issue either an overnight check to creditor or a wire transfer from your NoteWorld Trust account. For each transaction, NoteWorld will charge a $15 fee to process payment.

Term Settlements. SDS may negotiate what is known as a term settlement on your behalf. This is a settlement in which we negotiate a lower percentage than what is owed and make payment arrangements with your creditor over time. Once this is negotiated and arrangements are made with your creditor SDS considers this account settled. We will take no further action with this creditor on your behalf. If you fail to meet the conditions of this settlement SDS will assume no responsibility or liability for your failure to comply with the terms of the settlement agreement. We have fulfilled our obligation by negotiating a settlement on your account and you are now responsible for meeting the terms of that settlement.

   (a) In the event Client comes into a lump sum of money and wishes to settle all accounts before designated completion date, Client must pay the SDS fee along with the lump sum when settling the accounts.

   (b) In the event a settlement offer is reached and client does not have required reserves available (as per Funds Transfer Schedule) one warning will be given. If for a second time Client does not have required reserves available for settlement of an account, client may be cancelled from the program due to breach of contract. NO service fees will be refunded.

5. Monthly Summary of Account. SDS will provide Client with a monthly summary to inform Client of the status of Client's account. Client has the choice to receive the monthly summary online or through the mail.

6. Term. This Agreement will terminate when each of the credit accounts representing the Program Debt is satisfied or upon termination by either party as provided below.

7. **ACKNOWLEDGMENTS AND DISCLAIMERS.** Client acknowledges and agrees that:

   (a) The outcome of the negotiation Service SDS provides to Client is uncertain and cannot be guaranteed. Client understands that each situation is unique and that results will vary.

PLAINTIFF'S
EXHIBIT B

Page 2 of 5



**The Superior Debt Solution**

(b) Balance Transfers, cash advances and accounts that are in summons or judgment status will settle at higher percentages.

(c) The performance of the Service will have an adverse effect on Client's credit rating and SDS is not responsible for the actions of the creditors in response to settlement efforts.

(d) The Service does not include the modification, correction or improvement of Client's credit reports. SDS cannot guarantee how national credit reporting agencies will report a settlement. Upon settlement of an account, SDS will send proof of settlement to Client, who may forward it to credit reporting agencies.

(e) In the event a creditor or debt collector pursues legal remedies against Client, neither this Agreement nor the Service includes legal representation. In the event SDS elects to provide legal representation or other assistance, such representation or assistance will be provided through an outside source.

(f) SDS will retain legal counsel in the performance of the Service, but such counsel represents SDS and not the individual client.

(g) Neither this Agreement nor the Service includes any tax representation, such as audit and verification, debt retirement, or Internal Revenue Service tax negotiation.

(h) The discharge of indebtedness may be considered taxable income; Client should seek the advice of a tax professional.

8. **Termination.** Either party may terminate this Agreement upon 5 days written notice to the other party. SDS may immediately terminate this Agreement if Client fails to timely return documents, fails to timely respond to SDS or fails to set aside money in accordance with the Fund Transfer Schedule. There is a $75.00 processing fee for cancellations after 5 days and prior to the date of first payment.

9. **Arbitration.** All disputes or claims between the parties related to this Agreement shall be submitted to binding arbitration in accordance with the rules of American Arbitration Association within 30 days from the dispute date or claim. Any arbitration proceedings brought by Client shall take place in Orange County, California. Judgment upon the decision of the arbitrator may be entered into any court having jurisdiction thereof. The prevailing party in any action or proceeding related to this Agreement shall be entitled to recover reasonable legal fees and costs, including attorney's fees which may be incurred.

10. **Choice of Law.** The laws of the State of California will govern this agreement without regard to the conflict of laws provisions thereof.

11. **Integration.** This Agreement and the Schedule are the complete and exclusive statement of the agreement and supersedes any proposal, prior agreement, oral or written, and any other communications relating to the settlement of debt.

12. **Amendment.** This Agreement may not be changed, amended, terminated, rescinded or discharged, except by a writing document executed by the parties hereto, except as provided in Paragraph 3 above relating to NSFs and reschedules, and no waiver of any of the provisions or conditions of this Agreement or any of the rights of a party hereto shall be effective or binding unless such waiver shall be in writing and signed by the party claimed to have given such waiver.

(a) **Severability.** If any of the above provisions are held to be invalid or unenforceable, the remaining provisions will not be affected.

Client Name (Print): ███████████

Spouse Name (Print): ███████████

Client Signature: ███

Date: 3-1-06

Spouse Signature: ███

Date: 3-1-06

Page 3 of 3

PLAINTIFF'S
EXHIBIT B
Page 3 of 5



**The Superior Debt Solution**

## PROGRAM VERIFICATION

This document is to verify your conversation with your debt consultant, and that you fully understand the items listed below. Please indicate your understanding by *signing your initials on the lines at the end of each statement*:

1. SDS West Corporation will not be making payments on my behalf to my creditors. My payments will be held in a trust account to accumulate for settlement. Only SDS West Corporation fees will be debited from my account based on the attached schedule.

2. I understand that this program will have a negative effect on my credit, while in this program.

3. I understand I cannot charge on any of the accounts I have included in the program, since these accounts will be closed.

4. I understand that if I keep a credit card for emergency purposes, it cannot be linked to any accounts included in the program.

5. I understand that I cannot have any credit cards / bank accounts outside of the program, which are related to an account which is included in the program.

6. I understand I cannot have any bank accounts (checking, savings, etc) with banks that are also creditors I have placed in the program.

7. Attached is the payment worksheet that details my payment program. It is clear that the down payment to SDS West Corporation for their program fee is broken down into payments and will come directly to SDS West Corporation for the down payment period. After that period the funds will remain in my trust account, except for the balance of the monthly program fees, which will be deducted for the next 10-14 months, based on my program. The balance of the funds will accumulate in my account each month to be used for my settlements.

8. I will be receiving a Welcome Package within 7-10 business days delivered by FedEx. FedEx is unable to deliver to gated communities or P.O Boxes. There is no reason I would not be able to receive a FedEx.

   The packet will include a full breakdown of the numbers attached, including a Limited Power of Attorney and a Cease & Desist Notice self addressed to each of my creditors. I will read the package carefully. These letters are to inform my creditors that SDS West Corporation is now representing me and that they will need to contact SDS West Corporation to discuss my accounts. I agree to sign each of these letters and mail them to the creditors by *certified mail* with a *return receipt requested.*. Should the creditors contact me in the meantime, I will simply advise them to contact SDS West Corporation.

10. I understand that I will receive a phone call within 10 days to verify receipt of the Welcome Package and to answer any questions I may have regarding the letters to my creditors and/or any information in the package that may need clarification.

11. I understand fully the above information.                        Date: 3-1-06

   Print Your Name

   Signature

PLAINTIFF'S EXHIBIT B

Page 4 of 5



**The Superior Debt Solution**

## IMPORTANCE OF KEEPING TO THE PAYMENT SCHEDULE

It is our job to deal with the creditors, get the best settlements possible, insure that the documentation is clear when the settlement is complete so the creditor can never come back to you for more funds, and get the best result ad to what the creditor reports back to the credit bureau.

However, to get the best result you must stay on track with your payments. Your debt analyst has set a payment program with you that you have committed to maintain. If payments are missed or postponed, then the formula when working with creditors will not work and you will not get the outcome you want.

You are in this program to save money, not to spend more money. Missing or rescheduling payments costs you money. Should you have a "non sufficient funds" by not having money at your bank at the appropriate time, you will receive NSF fees from your bank and from NoteWorld. This could add up to a substantial amount of fees. If you reschedule your payment with SDS West in the first 3 months, you will pay a reschedule fee of $75.00.

We hope your focus is clear. Getting out of this debt should be your top priority after paying your house payment or rent, food for your family and car payments. This payment should be your next priority. We also encourage you to put any additional funds available, (tax returns, job bonus, selling items you no longer need) or when things improve for you financially, into this account. It will allow SDS West to settle your debt even earlier then projected.

We have a commitment to get you out of debt as soon as possible. Working together, you will be debt free in a short period of time and experience the freedom that comes with it.

My first payment is due on _____ 15 _____ and each month thereafter. The draft will come out of my account at 12:01 a.m. Central time on the day I have chosen for my payment date.

Client Signature ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Date 3-1-06

Internal Use Only
Debt Analyst Reviewed/Verified with Client _____

PLAINTIFF'S
EXHIBIT B

Page 5 of 5



*...to a new beginning!*

## *Congratulations!*

You have chosen to take a courageous step toward financial security.  We understand how difficult these past several weeks and months have been for you.  At times, the amount of stress and anxiety you feel for owing to your creditors can be overwhelming.  Our goal, over the next several months, is to help you eliminate the feeling of hopelessness you endure when you think about your debts.  We are going to help you achieve the peace of mind that you deserve and finally take control of your life again.

Within the next few days, one of our well trained, experienced Customer Service Representatives will be in contact with you via telephone to discuss the contents of this packet.  At that time, you are encouraged to ask any questions you may have to ensure a comprehensive understanding of your debt settlement program.

Enclosed in this packet, you will find Cease and Desist Letters for each of your creditors.  It is important to send these letters out to your creditors via Federal Express or UPS to obtain a tracking number when delivered to their office.  This notice does not inform your creditors of your enrollment in our program, however, it does stress the fact that they cannot contact you via telephone and instead must correspond in written form only.  One of our representatives will discuss this with you in more detail when they contact you.  In the meantime, if you receive any phone calls from your creditors, please follow the scripts provided in this Welcome Packet.

> *"We are going to help you achieve the peace of mind that you deserve..."*

This Welcome Packet is your roadmap toward the successful completion of your debt settlement program.  Obtaining a thorough understanding of your debt settlement program will guarantee a positive, impactful relationship between yourself and our company.



The Superior Debt Solution

PLAINTIFF'S
EXHIBIT C
Page 1 of 13

# *Online* Communication

*"Communication leads to community, that is, to understanding, intimacy and mutual valuing."*

– Rollo May

Access your account online, 24 hours a day, 7 days a week!  It's simple and easy to use.  You can obtain call records, check the status of documents sent to our office, change your address, access important documents and even email us directly through your account.   Follow the simple steps below and you will be able to manage your account online instantly!



1. Go to our **website**.
2. Log into the **Client Section**.
3. Enter your **username** (the e-mail address we have on file for you).
4. Enter your **password** (the last 4 digits of your social security number).

If you need further assistance on how to access your account online, call one of our Customer Service Representatives at (800) 498.7510 and they will be glad to assist you.

Benefits of Accessing Your Account Online

- ☑  Avoid waiting on hold
- ☑ E-mail us directly from our website
- ☑ Access documents instantly
- ☑ Read articles to gain knowledge about the credit card and debt settlement industry
- ☑ Review your rights vs. the creditor's rights in the FDCPA

PLAINTIFF'S
EXHIBIT C

Page 2 of 13

# Communication With Your Debt Settlement Company



Thank you for selecting our company to assist you in the process of becoming debt-free and regaining control of your financial life. Our commitment is to make this program as successful and stress free as possible, however, it will require clear and open communication between our company and you. The section below provides you with an outline of when you can expect to hear from us and, on the following page, when we should expect to hear from you.

## Our **Communication** with You:

**Day 3-5**     One of our friendly Customer Service Representatives will contact you to review this Welcome Packet. You will have an opportunity to ask any questions that may have come up during your review of this packet.

**Day 30**     Your highly-skilled Account Manager will contact you via telephone to review a strategy with you. It is important that you call your Account Manager back as soon as possible if he or she leaves a message. This telephone call is an essential element of your program. It will provide information that will be critical when we communicate with your creditors to negotiate the best settlement possible.

**Day 60**     You will receive a call from our Customer Service Department to review vital information, answer any questions or concerns you may have and to ensure your program is progressing appropriately. At this juncture of the program you probably will not have funds accumulated in your NoteWorld Trust Account; however, this call will provide us with an opportunity to address any questions you might have and to review aspects of the program that you feel need additional clarification.

In addition to these three calls, you will receive calls and email correspondence throughout the duration of your program from our Customer Service Representatives and Account Managers. The calls we make to you have been designed to ensure you have thorough and up-to-date information about your program. Your participation in this process will teach you the valuable skills necessary to become *debt-free!*

*"More people talk themselves into failure than talk themselves into success."*

~Zig Ziglar

PLAINTIFF'S
EXHIBIT C

Page 3 of 13

# Communication With Your Debt Settlement Company

*"Success is the intersection where dreams and hard work meet."*

*– Lynn Goldblatt*

## Your **Communication** With Us:

### Written Correspondence

If you receive any written correspondence* regarding the accounts you have enrolled in our program, please fax, mail or e-mail them to our office right away. Not every document you receive will require any action to be taken by you or us; however, by sending us the documents, you will ensure a much simpler and less stressful experience in your debt settlement program.

*Monthly credit card statements are not needed.

### Creditor Calls

Unfortunately, receiving creditor and collector calls may be part of your debt settlement process. The number of calls you receive will all depend on your personal situation (i.e. the creditors enrolled, the amount of debt, the delinquency of your accounts, etc.). If you receive calls from a creditor or collector, please use the scripts we have provided and record the call in your call log. When one of our Customer Service Representatives contact you to review this Welcome Packet, they will send you a newsletter entitled "Handling Creditor Calls & Threats". This newsletter will keep you informed of all necessary information you need pertaining to creditor and collector calls.

---

### General Questions Regarding Your Account:

**Customer Service Department**
(800) 498.7510
Open Monday thru Friday, 8am to 5pm PST

**Customer Service Fax**
(800) 498.8945

**Customer Service E-Mail**
cs@localsvcs.com or you may access your account online and click the Contact Us tab

PLAINTIFF'S
EXHIBIT C

Page 4 of 13

*Debt Collectors*
And Your Rights



## Abusive Debt Collectors

The debt collection industry is one of the most complained-about industries.   From 1999 to 2001 (the latest years available), the debt collection industry was the #1 complained about industry in the USA.  This is because, despite the Fair Debt Collection Practices Act, which regulates debt collection activities and behavior, too many debt collectors are poorly trained and informed and work in an industry with a very high turnover rate.

*"Collectors are trained to make you emotional on the phone."*

Many debt collectors use abusive and illegal tactics against debtors as the collectors know they will get away with their illegal tactics and behavior because (1) most consumers are uninformed about debt collection laws; (2) it's hard to prove the behavior occurred and it's hard to prosecute it; and (3) there is a legal loophole in the law that allows debt collection agencies who get into trouble to simply close their current operation and create a new company and identity, and thus avoid any existing injunctions and continue to operate in the same manner.

Not all collectors are bad; some of them are just doing their job. But as we have seen, a lot of debt collectors break the law on a daily basis. Debt collector's only concern is to get the money, not help you. Remember, collectors go through very little training and are not very well paid. The collection industry, in fact, has the highest turnover rate; it's tough being a professional tyrant.

Collectors are trained to make you emotional on the phone. If they can succeed at getting you angry, upset, or crying, you are more likely to pay them than anyone else. They yell, scream, threaten, and intimidate. Twenty plus calls in a night is illegal, but it can also be reality.

*"The worst bankruptcy in the world is the person who has lost their enthusiasm. Let someone lose everything else in the world but their enthusiasm and they will come through again to succeed."*
-H. W. Arnold

PLAINTIFF'S
EXHIBIT C
Page 5 of 13



*Debt Collectors*
And Your Rights

## How to Address the Calls

Calls from debt collectors can be very annoying, to say the least. For some, the calls are so bothersome that they have to change their number or disconnect the phone all together to avoid calls from debt collectors.

What many people haven't realized is that they don't have to resort to such measures to keep debt collectors from making harassing phone calls. In fact, under the Fair Debt Collection Practices Act (FDCPA), you are allowed to tell debt collectors to stop contacting you. Debt collectors would rather talk to you over the telephone because it's beneficial to them. In most cases, they can say whatever they want, knowing that you'll have no record of it ever being said.

There is no law that says you have to communicate with a debt collector by phone. If you hang up on a debt collector there is nothing they can do about it. But, if the collector continues to call you repeatedly, even after you have hung up on them, they are in violation of the FDCPA.

To stop debt collectors from calling you, tell them that you prefer to communicate with them in writing. The advantage of written communication is that you can keep a record of everything that is said to you. Should the debt collector violate the FDCPA, you have hard evidence of the violation that could lead to a lawsuit in your favor. Keep in mind that, by law, the debt collector does not have to honor your verbal request.

The surest way to stop debt collectors from calling you is by sending what is known as a Cease and Desist letter. In the letter(s) you have been provided it states that the collector should cease and desist further communication with you by telephone. Note that the cease and desist letter only applies to debt collectors, not the original creditor. However, most of the major credit card companies follow policies that mirror those of the FDCPA and will comply with your request to stop phoning you at home, work, etc.



**Note:** Collectors do have the right to call you after you request them to stop phoning you if the status of your account changes. They can call you to tell you they are (1) giving up collection efforts; (2) are turning your account over to an attorney; or (3) are going to sue you. But usually, they won't call you again after you request that they cease. If a debt collector does contact you after you have requested he stops, you might have the right to sue and collect damages.

**PLAINTIFF'S
EXHIBIT C**

**Page 6 of 13**

*Creditor*
Scripts

Remember, a collector's job is to collect money so many of them may try to intimidate you. Your best defense is not to engage them in conversation as this will only serve to provide them with the opportunity to play on your emotions. Many clients feel guilty about owing money, and collectors, knowing this fact, will use that play on your emotions in order to obtain information from you. Do not explain yourself to the collector. You have taken your first step toward resolving your financial situation by enrolling in a debt settlement program.

### WE SUGGEST YOU CUT OUT THESE SCRIPTS AND PLACE THEM NEXT TO YOUR PHONE



**What To Say When You Are At Home or Work**

**I am requesting that you not contact me by phone in the future. I made this request to you in writing as well. I do not want to receive any more calls from you at home or at work and am asking you to communicate with me only in writing. Thank you.**

**\*\*Hang up the phone\*\***

**Record the incident of the call in your call log**



**What to say if the creditor continues to call.**

**The Fair Debt Collections Practices Act requires that you stop phoning me at home and at work once I request that you do so. Only communicate with me in writing. I intend to send you another certified letter tomorrow putting my request in writing again. If you continue to phone me I will file a complaint.**

**\*\*Hang up the phone\*\***

**Record the incident of the call in your call log**



PLAINTIFF'S
EXHIBIT C
Page 7 of 13

*Helping You Achieve Peace of Mind*

**Client Name:** Test Account

We understand how stressful calls from your creditors and collectors can be.  That is why we are providing you with this easy-to-use Call Log.  The purpose for recording the calls in this log is to have clear documentation of every call received.  If you receive a call from any of your creditors or collectors, please log the details of the call below.

| Date/Time Called | Name of Caller | Company Name | Account/ Reference # | Amount Owed/ Requested | Phone Number | Notes/Comments |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

19500 Jamboree Road, Irvine, CA 92612 (800)498.7510 phone (800)498.8945 fax

PLAINTIFF'S EXHIBIT C

Page 8 of 13



*Frequently Asked Questions*

## Who can join a debt settlement program?

Debt settlement programs are structured for people who are in or have been in a true financial hardship and fit the following criteria:

- Are experiencing a financial hardship
- Have created a habit of late payments
- Unable to make future payments
- Seeking bankruptcy guidance

*Examples of hardships include a loss of income, medical emergency, death of a family household member who provided financial assistance, divorce, natural disaster and unemployment.*

If you are currently meeting your monthly debt obligations and are able to continue doing so, our debt settlement program will not be the most effective option for you.

## Who is not qualified for our program?

This program is not designed to settle debts for people who have reasonable means to pay off their debts. If you have the ability to pay your debts monthly, then we recommend you do so. This program is not for people who have a high credit rating and can meet their monthly obligations.

## What will I pay for your services?

Our company charges a fee based on the total amount of debt an individual brings into the debt settlement program. This program will typically require three down payments, then small monthly fees paid throughout the first year of the program. All costs and fees are always fully disclosed and your signed approval is required upon enrollment into our program.

## Does your company guarantee to settle all debts I enroll in the program?

Because of the credit card industry, we cannot make a guarantee that your creditors will accept an offer less than the current balance, however, prior to your enrollment in our program, we confirm that each debt entered in our program has the potential to be settled by our office.

PLAINTIFF'S
EXHIBIT C
Page 9 of 13

19500 JAMBOREE ROAD, IRVINE, CA 92612 (800)498.7510 PHONE (800)498.8945 FAX

### How are my debts "settled?"

You have been asked to put aside and save a pre-agreed amount of funds on a monthly basis. This amount you will be saving was determined during your initial consultation with your Debt Analyst and was based on the total amount of debt enrolled. The money that you are putting aside each month should be in line with your monthly income and expense budget.

Each one of our clients has a unique situation therefore the time in which we begin to negotiate settlements will be different depending on many factors (amount of debt, stage of delinquency, type of creditor, etc.).

Once a settlement offer is received and you agree to it, we will request the creditor send us the settlement offer in writing. If the creditor sends the offer in writing, a recorded phone conversation with you, the creditor and your Account Manager will take place to ensure all stipulations of the settlement are agreed upon.

The creditor may set-up a term settlement or a lump sum settlement. A **term settlement** is a specified amount of money that is paid over an extended period of time, typically on a monthly basis. For instance, the creditor might make an offer for $2,500.00 where you put $1,000 down initially and payments of $500.00 over the next several months until the account is paid. A **lump sum** settlement is a specified amount of money paid typically in one payment.

### Will interest and fees continue to accrue on the accounts I enroll in the program?

Although your accounts are most likely closed, creditors and collectors do still have the right to add additional interest and fees. The additional interest and fee accruals will typically continue until the debt is written off by the original credit grantor. (Usually for 120-210 days after you stop making payments).

### Does *debt settlement* have a negative impact on my credit?

The severity of your credit impact will depend on your circumstances upon enrollment and your previous credit history. Most accounts we negotiate are going to *charge-off* or get transferred to a third party assigned to collect the debt. Once charged-off, the credit bureaus are notified. Once the account is settled, the credit bureaus will be notified once again. Even though your creditors and collectors are required to send settlement letters to the credit bureaus, you will receive a copy of each letter as well to expedite the process. While aspiring for a high credit score is ideal, if you are experiencing a financial hardship the first step and priority in attaining this goal should be to pay off your debts as this will set the foundation for re-establishing a solid financial future.

### Will my information be kept confidential?

We maintain your confidentiality at all times and are bound by the **Rules of Professional Conduct** act. We will only disclose information to those persons in which you have authorized.

### Do you make monthly payments to my creditors?

We do not disburse funds to your creditors to make your minimum monthly credit card payments while you are enrolled in our program. The purpose of our debt settlement program is to settle your debts at a reduced amount. It is ultimately your decision as to whether or not you are going to make payments to your creditors each month while you are enrolled in our program. Our experience, however, is that clients who are unable to make monthly payments to their creditors or who choose not to pay their creditors while enrolled in our program have a much higher success rate than those who continue to make monthly payments to their creditors. If you are able to afford making monthly payments to your creditors in addition to the funds for our fee and your settlement funds, then it may be in your best interest to do so.

**PLAINTIFF'S EXHIBIT C**

Page 10 of 13

### Can I still use my credit cards?

Because of the fact that your creditors have full access to your credit report, we require that you do not use any of your credit cards, even kept out of our program.  If your creditors notice that you continue to charge on any of your credit cards, the likelihood that they will negotiate with us is very small.

### Can I be sued by my creditors?

It is possible that a creditor may sue you in court and win a judgment. However, the chances of this are *small.* Typically the purpose of a lawsuit is to force a settlement on the matter.  In our experience, most creditors would rather not go through with the expense of suing and would try to negotiate a settlement instead.

### Can you stop my creditors from calling me?

The Notice to Cease Telephone Communications letter that you are mailing to your creditors via FedEx or UPS is bound by the Fair Debt Collection Practices Act (FDCPA).  We cannot control what your creditors ultimately end up doing.  However, if you have proof that you sent the letter to your creditors and they violate the FDCPA, you can take legal action against them.

### Can creditors garnish my wages?

A creditor can garnish your wages only if you are sued and a judgment is obtained.  Most clients who are sued and receive a judgment do not get their wages garnished.  In the event a garnishment does take place, your Account Manager will be in immediate contact with your creditor to try working out a settlement as soon as possible.  Many states also provide documents a consumer can file to dispute the garnishment depending on your situation.

If a creditor calls you to threaten a garnishment, most of the time they are simply trying to intimidate you into paying back your debt immediately.  Remember, a garnishment is not possible without a judgment.

### What are the tax consequences?

Your creditors can report cancelled and settled debts exceeding $600 to the IRS and you are required to report the same as income on your annual tax return. However, the IRS permits you to write off any "income" from canceled debts up to the amount in which you were "insolvent" at the time. It is always a good idea to consult with your own tax advisor for advice specific to your situation.

### Does your company repair my credit?

Any legitimate negative credit information cannot be removed from your credit report.  The speed in which your credit report will improve depends on how positive or negative your credit was during the time you enrolled in our program.

### Can I negotiate with my creditors on my own?

You can negotiate and settle with your creditors on your own.  In fact, if you successfully negotiate a debt it may cost you less in the long run to use this approach than to use our service.  However, the debt settlement process can be a time consuming, stressful and extremely complex task for the average consumer.  Our Account Managers have the experience and knowledge in settling accounts with creditors.  Don't spend all your time and effort trying to negotiate on your own when you can rely on our experience to get the best settlements possible for you.

**PLAINTIFF'S
EXHIBIT C**

Page 11 of 13

## What is the difference between unsecured and secured debt?

**Unsecured debt** is any loan that has no tangible assets or property attached to it. The most common unsecured loans are credit cards, department store credit cards, medical bills, utility bills and personal loans. If you fail to make your payments on time the lenders can attempt collection and pursue legal action.

**Secured debt** has collateral in the form of a security interest in personal and/or real property. If you fail to make your payments on time the lender is entitled to repossess the property and sell it. Please keep in mind that you may still be liable for any deficient balance remaining after the sale of the property. When working with a secured loan it is in your best interest to seek the advice of a licensed attorney to assist in protecting your assets.

## Is bankruptcy a better option for me?

Debt settlement is the last option to seek before bankruptcy. Anyone considering our program may also wish to contact a bankruptcy attorney to determine if their situation warrants filing for bankruptcy or not. Using the debt settlement process does not guarantee that you will not have to file for bankruptcy in the future. Bankruptcy is a difficult and personal decision that only you can make for yourself.

## Is it okay to buy "stuff" while I'm in your program?

We recommend that you wait. Sometimes things are necessities, but most things simply aren't. If you want to buy a nice new bedroom set or go on a family vacation to Europe, you should wait until you pay off all your debts. The bedroom set is not something you "need". Europe will still be there once you have paid off your debts and you certainly don't "need" to go to Europe on vacation. Being free of debt so that your family can live and save is far more important than buying a new bedroom set or going on vacation. As long as you have what you need to physically survive, there are very few things more important than getting out of debt. Now is the time to sacrifice and you might need to make some painful decisions. You may need to sell some stuff; your car, the house, have a garage sale, and so on. These are not pleasant things but, depending on your situation, you will have to make these decisions yourself.

## Should I cash out my 401(k) to expedite paying off my debts?

Cashing out your 401(k) is an extremely poor choice to pay off your debts. You will be taxed 40 percent on the cash out of your 401(k). Think about it, that is equivalent to taking out a loan at 40 percent interest.

We rarely recommend cashing out your 401(k). But if it looks like you cannot survive without paying off your debts and you do cash out your 401(k), you will need to set aside money for taxes. Don't touch one penny of that money! Put it away, keep yourself on a budget or you will find yourself in a big financial mess.

Looking at it another way; If your 401(k) is $12,000, that investment would grow to over $431,000 in thirty years. Cashing out this money now, with taxes, penalties, and lost interest income, would end up costing you $500,000! Is it really worth it?

## Is debt settlement the same as debt consolidation?

The goal of debt settlement is to reduce the overall amount of debt by negotiating agreed payoff amounts with your creditors. With debt consolidation you acquire a loan to pay off your unsecured debt with secured debt.

Debt consolidation loans transfer the debt from one account to another and typically convert an unsecured loan into a secured loan – in most cases, your home. If you have not acquired enough equity (typically 25-30% LTV), have poor credit or too much debt you are not likely to be approved for a debt consolidation loan.

Statistics show that about 70% of consumers who obtain a debt consolidation loan find themselves in even more debt than originally within a two year period.

PLAINTIFF'S
EXHIBIT C

Page 12 of 13

**What is the difference between consumer credit counseling and debt settlement?**

Debt settlement allows the reduction of your overall debt by negotiating a payoff amount with your creditors. You will save an agreed upon amount each month based on your income and expense budget. Once enough funds are accumulated your Account Manager will negotiate a settlement with your creditors based on the funds you have available.

Consumer credit counseling (CCC) companies typically have a non-profit status. Many people confuse "non-profit" with "free services" or charity. After a credit counselor analyzes your unsecured debts, other financial obligations and your monthly income they will calculate a monthly budget and present a plan that includes lowering monthly creditor interest rates and possibly even payments. The CCC company will contact your unsecured creditors and request that you be a part of the bank's *hardship repayment plan* at a lower interest rate. Most hardship plans run for 12-18 months and most CCC programs run 48-60 months. During the program you make monthly payments to the CCC company and on your behalf they will make the monthly payments to your creditors.

PLAINTIFF'S
EXHIBIT C
Page 13 of 13

# *Summons Response Packet*



**SDS WEST**
**LEGAL**
**RESOURCES**

The following is not legal advise or the provision of legal services, but a guide of how to format an answer to a complaint filed by a credit card company in the collection of a credit card debt. The contents of the information or direction as to the content of your answer. Further, formatting varies from state to state and from county to county. Please determine the format requirements in your jurisdiction (state and county) before filing answer. This sample answer is to assist you in understanding the formatting instructions only and not to fill in blanks.

## Formatting Your Answer:

Below is a template that may be valid in certain jurisdictions. It is important that your answer be in the correct format. Errors in formatting often result in the court rejecting the answer. If your answer is rejected, you will likely miss the deadline for filing a timely answer, which may result in a default judgment being filed against you.

You may use the sample summons response to create and format your answer. The **bold** letters below correspond with to the sample we have provide to assist you in responding to your summons.

    **(A)** Please list your name and address as formatted on the sample with the words "Defendant in Pro Per" right below the city, state and zip code.

    **(B)** List the name of the county courthouse and division as shown on the example.

    **(C)** List the state and county of the courthouse as shown on the example.

    **(D)** List the name of the creditor followed by the word "Plaintiff" as shown on the example.

    **(E)** List the Cause/Case number as shown on the example.

    **(F)** List your name followed by the word "Defendant" as shown on the example.

    **(G)** List your name ("Defendant") and the name of the creditor ("Plaintiff") as shown on the example.

## First Affirmative Defense

**PLAINTIFF'S
EXHIBIT D**

Page 1 of 6

    **(H)** In this section you are not denying but acknowledging the fact that you owe **A** debt. You will state, in a few sentences or a small paragraphs, that you acknowledge **A** debt to the creditor.

Nothing in this document shall be construed as rendering legal advice. You must refer to your state laws, rules and procedures. The documents provided to you are for informational purposes only and may not be used for any other purpose. You are not to reproduce the documents or the test contained herein in any manner or form
mfo2005

<u>A few things you may want to consider:</u>

- You may consider **denying** that you owe that debt based upon the presumption that you do not owe the entire amount claimed by the creditor. Or you may want to consider acknowledging that you owe part of the debt rather than the entire amount claimed.

  **For example:** your interest rate may have started at a very low or moderate level and then upon your missing a payment the interest was increased to a very high level.
  As a result
    - You may have had difficulty making you monthly payments
    - Your overall balance increased at a much more expeditious rate, again causing an increase in the balance of your account and the monthly payment owed to the creditor
    - Due to excessive late fees and over– limit fees, the balance of your account steadily increased along with the payment amount owed each month.

## Second Affirmative Defense

**(I)** In this section you will state the reason for your hardship and why this debt cannot be paid at this time.  You will state the facts, as you see them, surrounding your situations and your position.  <u>Basically you want to tell your story.</u>

- What happened?
- How did you find yourself in this situation?
- What event(s) occurred in your life that caused you to fall behind on your payments?
- Did you experience a hardship?  If so, what was it?
  Example of a hardship may include loss of employment, unexpected emergency bills, wage loss, overextension of credit, medical expenses, and sudden increase in interest rate on your credit cards, etc.

Do not feel bashful and if necessary use multiple pages to explain the reasons why your debt can not be paid at this time.  If you feel that the creditor has harassed you, include that information as well.

Nothing in this document shall be construed as rendering legal advice. You must refer to your state laws, rules and procedures. The documents provided to you are for informational purposes only and may not be used for any other purpose. You are not to reproduce the documents or the test contained herein in any manner or form.

PLAINTIFF'S
EXHIBIT D

Page 2 of 6

## Third Affirmative Defense:

**(J)** In this section you will address the court and advise them as to your intentions to resolve this debt. You may inform the court that you're seeking the help of a debt settlement company to assist you in paying off your debt.

**(K)** **This section is optional**. The definition of this request is to ask the courts that the Plaintiff (creditor) not receive judgment at this time and that you request that you do not pay for the legal costs of this litigation. This request is entirely decided by the judge. In almost all cases the Plaintiff (creditor) will be awarded the judgment and the cost of the suit but it doesn't hurt to ask.

**(L)** You will date this answer/response with the date of mailing your documents.

**(M)** You will sign your name and place the words "Defendant in Pro Per" below your signature.

You have now completed your answer/response to your summons using the sample summons response format. Nothing in this document shall be construed as rendering legal advice. You must also refer to your states laws, rules and procedures for further assistance if needed. The document(s) provided to you is for informational purposes only and may not be used for any other document. You are not to reproduce the document(s) or the text contained herein in any manner or form.

Please be sure to **send a copy of your answer/response to the court and a copy of your answer/response to the plaintiff's attorney** as instructed on the summons.

**Also, please send a copy of your answer/response to Legal Resources to be placed in your file** and please retain a copy for yourself.

It is very important that these instructions are followed and within the time frame allotted. Failure to follow the instructions on the summons may result in a default judgment against you.

Nothing in this document shall be construed as rendering legal advice. You must refer to your state laws, rules and procedures. The documents provided to you are for informational purposes only and may not be used for any other purpose. You are not to reproduce the documents or the test contained herein in any manner or form.

PLAINTIFF'S
EXHIBIT D

Page 3 of 6

## Commonly asked questions:

**Why answer the complaint if there is no disputing that the debt is owed?**
If the complaint isn't answered, a default judgment may be entered against you, making it that much faster for the creditor to pursue collection on the judgment. By submitting an answer, the entry of a judgment can be postponed, allowing more time for negotiating on the account and for settlement funds to accrue.

**Answering the complaint DOES NOT PREVENT JUDGMENT. The creditor has the right to collect on the debt.**

**Can an account that has a judgment still be settled?**
Yes. An account that has received a judgment may still be settled.

**I have received a summons for a court appearance, should I appear?**
**Yes!** If you receive a summons commanding you to appear you should always follow the instructions on the summons asking you to appear. Hearings are not always for the purpose of having a judgment rendered. Court hearings can be a valuable opportunity to negotiate a settlement on your account. By proving your hardship and showing good faith interest in paying the debt, the judge may delay the judgment if an agreement is made to pay monthly payments with the creditor.** Such an arrangement would prevent further collection methods, such as garnishment and bank levy until the account is settled.

** In many instances we will be able to negotiate with your creditor on your behalf while you are at the courthouse. Contact Legal Resources for further information on this process.

Nothing in this document shall be construed as rendering legal advice. You must refer to your state laws, rules and procedures. The documents provided to you are for informational purposes only and may not be used for any other purpose. You are not to reproduce the documents or the test contained herein in any manner or form.

PLAINTIFF'S
EXHIBIT D
Page 4 of 6

**A**

[Client name]
[Street address]
[City, State, Zip code]
Defendant in Pro Per

**B**

[Court Name and Division]

**C**

State of (_____), (_____) County

**D**

[Name of creditor]

Plaintiff,

Cause/Case No. (_____)

**E**

Vs.

**F**

[Name of client]

Defendant(s),

**G**

[Client name] ("Defendant"), hereby answers the complaint of [Creditor name] ("Plaintiff") for it's self alone as follows and generally denies the allegations of the complaint based on lack of information and belief:

**H**

FIRST AFFIRMATIVE DEFENSE

SAMPLE SAMPLE SAMPLE

PLAINTIFF'S
EXHIBIT D
Page 5 of 6



**SECOND AFFIRMATIVE DEFENSE**

I

**THIRD AFFIRMATIVE DEFENSE**

J

WHEREFORE, Defendant requests that:

K

1. Plaintiff takes nothing by way of his Complaint; and

2. For Defendant's costs of suit.

Dated: *[insert date of filing]*

L

_____

*[Client Signature]*
*[Client name- PLEASE PRINT]*

Defendant in Pro Per

PLAINTIFF'S
EXHIBIT D
Page 6 of 6



SDS WEST
LEGAL
RESOURCES

# Motion to Compel Arbitration Packet

The information contained in this packet is provided for your convenience and is not legal advice or the provision of legal services. This packet provides guidance on how you can format a "Motion to Compel Arbitration". The purpose of this motion is to ask the court to order an arbitration hearing before the creditor is allowed to pursue any further court action in the collection of your credit card debt. The contents of your motion will be based upon your particular case and the jurisdiction in which you will file the motion and as such we offer no information or direction as to the content of your answer. Please be aware that formatting requirements can vary from state to state and from county to county so it is important that you verify the formatting requirements of your filing jurisdiction (state and county) before filing your motion to compel arbitration.

## FORMATTING YOUR MOTION:

After you verify that your state and county does not have any specific filing requirements, you may use the sample motion provided to create and format your "Motion to Compel Arbitration." The **bold** letters below correspond to the sample we have provided to assist you in responding to your summons. We encourage you to format the "Motion to Compel" on your own computer in the same format as the sample provided.

**A.** Type your name and address as formatted on the sample with the words "Defendant in Pro Per" right below the city, state and zip code.

**B.** Type the name of the county courthouse and division. Also list the state and county of the courthouse.

**C.** Type the name of the creditor followed by the word "Plaintiff". Below this information, type the abbreviation "VS.", followed by your name and the word "Defendant".

**D.** Type the Cause/Case number (this can be found on the original summons).

**E.** Type your name followed by ("Defendant") and the name of the creditor followed by ("Plaintiff"). .

**F.** This section is for your reference and explains why you are requesting arbitration and the specific rules and laws which govern the arbitration process.

> **2a.** If the original credit card agreement is not available, you may elect to exclude the following: "(See Credit Card Agreement, attempted hereto as Exhibit A.)"

**G.** The definition of this request is to ask the court to stay the claim made by the plaintiff and to order the plaintiff to go through arbitration, as stated in the credit card agreement. By requesting a "stay", you are asking the court to stop this litigation process from moving forward, allowing you time to accumulate funds for the settlement of your debt. A judgment will not be granted until the creditor pursues the arbitration you are requesting if this stay is granted.

Nothing in this document shall be construed as rendering legal advice. You must refer to your state laws, rules and procedures. The documents provided to you are for informational purposes only and may not be used for any other purpose. You are not to reproduce the documents contained herein in any manner or

PLAINTIFF'S
EXHIBIT E

Page 1 of 4

**Motion to Compel Arbitration Packet**

**H.** You will date this motion with the date you mail your documents. You will also need to sign and print your name and place the words "Defendant in Pro Per" below your signature.

You have now completed your Motion to Compel Arbitration. You will need to **file one copy in person with the county clerks office and send one copy to the attorneys office,** certified with return receipt.

Nothing in this document shall be construed as rendering legal advise. You must refer to your state laws, rules and procedures. The documents provided to you are for informational purposes only and may not be used for any other purpose. You are not to reproduce the documents contained herein in any manner or form

**Also, please send a copy of this motion to Legal Resources to be placed in your file** and please retain a copy for yourself.

Nothing in this document shall be construed as rendering legal advice. You must refer to your state laws, rules and procedures. The documents provided to you are for informational purposes only and may not be used for any other purpose. You are not to reproduce the documents herein in any manner or form.

**PLAINTIFF'S EXHIBIT E**

**Page 2 of 4**



**A**

[Client name]
[Street address]
[City, State, Zip code]
Defendant in Pro Per

**B**

[Court Name and Division]

State of (Name of State), (Name of County) County

**D**

Cause/Case No. (_____)

[Name of creditor]

     Plaintiff,

  Vs.

[Name of client]

     Defendant(s),

**C**

**E**

Motion to Compel Arbitration

**E**

[Client name] ("Defendant"), hereby answers the complaint of [Creditor name] ("Plaintiff") for it's self alone, as follows and moves this court to bar, stay or dismiss Plaintiffs claim based on the following:

**F**

1. Plaintiff filed a complaint against the defendant(s) for a credit card balance due.

2. Defendant moves this court to compel binding arbitration based on the Credit Card Agreement provided by the Plaintiff

    2a. The parties are bound by Credit Card Agreement to settle disputes by binding arbitration, not by litigation, upon the election of either party (See Credit Card Agreement, attached hereto as Exhibit A.). This Motion constitutes notice of election by the undersigned to have this dispute resolved by binding arbitration, as provided for in the Credit Card Agreement.

3. Plaintiff has never sought to take the defendant to arbitration

4. The Federal Arbitration Act ("FAA"), 9 USC, Section 1-2, provides:

**F**

Nothing in this document shall be construed as rendering legal advice. You must refer to your state laws, rules and procedures. The documents provided to you are for informational purposes only and may not be used for any other purpose. You are not to reproduce the documents contained herein in any manner or form.

PLAINTIFF'S
EXHIBIT E

Page 3 of 4



PLAINTIFF'S
EXHIBIT E

Page 4 of 4

    a.   "A written provision in any maritime transaction or a contract evidencing a translation involving commerce to settle by arbitration a controversy thereafter arising out of such a contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

5.  Defendant requests that pending the court's ruling on this Motion this action be stayed.

6.  "FAA", 9 USC, Section 1-3 provides:
    a.   "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

WHEREFORE, Defendant requests that:

**1.** This honorable stay the Plaintiffs complaint and any and all action related to this case.

**2.** This honorable court compel the Plaintiff to seek binding arbitration per the terms and conditions of the Credit Card Agreement.

Dated: *[insert date of filing]*

*Signature* _____
*[Client name- PLEASE PRINT]*

Defendant in Pro Per

Nothing in this document shall be construed as rendering legal advice. You must refer to your state laws, rules and procedures. The documents provided to you are for informational purposes only and may not be used for any other purpose. You are not to reproduce the documents contained herein in any manner or form.



**STATE OF ILLINOIS**
**DEPT. OF FINANCIAL & PROFESSIONAL REGULATION**
**DIVISION OF FINANCIAL INSTITUTIONS**

IN THE MATTER OF          )
                              )
SDS WEST CORPORATION     )     NO. 07CC148
                              )
                              )

<u>By Certified Mail</u>

To:   SDS West Corporation            William R. Mitchell
      65 Enterprise                      Berger Kahn
      Aliso Viejo, CA 92656         2 Park Plaza – 6th Floor
                                 Irvine, CA 92614
      Bruce Hood, Registered Agent
      820 Alabama St.
      Huntington Beach, CA 92688

**<u>ORDER</u>**

1.     SDS West Corporation (SDS) is a California corporation that provides "debt settlement and restructure services." SDS is not now, nor has it ever been, licensed in Illinois under the Debt Management Service Act (DMSA), 205 ILCS 665/1 - /22.

2.     Section 2 of the DMSA provides, in part, as follows:
           Debt management service means the planning and management of the financial affairs of a debtor for a fee and distributing it, directly or indirectly, to the debtor's creditors in payment or partial payment of the debtor's obligations or soliciting financial contributions from creditors.

3.     Section 3 of the DMSA provides as follows:
           It shall be unlawful for any person to operate a debt management service or engage in that business as herein defined except as authorized by this Act and without first having obtained a license as hereinafter provided.



PLAINTIFF'S
EXHIBIT F
Page 1 of 9
tabbies

4.    Section 12 of the DMSA provides as follows:

A licensee may not charge a debtor any fees or penalties except the following: (1) an initial counseling fee not to exceed $50 per debtor counseled, provided the average counseling fee does not exceed $30 per debtor for all debtors counseled; and (2) additional fees at the completion of the initial counseling services which shall not exceed $50 per month, provided the average monthly fee does not exceed $30 per debtor for all debtors counseled.

5.    38 Ill. Adm. Code 140.60 provides, in part, as follows: "(b) a licensee shall not charge any fee in excess of those provided in Section 12 of the Act."

6.    Section 16 of the DMSA provides, in part, as follows: "(c) The Director may set by rule monetary penalties for violation of this Act."

7.    38 Ill. Adm. Code 140.140 provides, in part, as follows:

a) The Director may penalize a licensee, or other person doing business without the required license, in an amount not exceeding $10,000 per violation, when in the opinion of the Director:

1) the licensee, or other person, is violating or is about to violate any provision of the Act or any rule or condition imposed in writing by the Department;

***

b) The Director may penalize a licensee, or other person, prior to a hearing.

8.    Section 20 of the DMSA provides, in part, as follows:

(a)    The Director may issue a cease and desist order to any licensee, or other person doing business without the required license, when in the opinion of the Director, the licensee, or other person, is violating or is about to violate any provision of the Act or any rule or condition imposed in writing by the Department.

(b)    The Director may issue a cease and desist order prior to a hearing.

***

(g)    If it is determined that the Director had the authority to issue the cease and desist order, he may issue such orders as may be reasonably necessary to correct, eliminate, or remedy such conduct.

2

PLAINTIFF'S
EXHIBIT F

Page 2 of 9

9.      On June 13, 2006, SDS entered into a debt settlement agreement (the "Lucas Agreement") with Robert and Cheryl Lucas, who are consumers residing in Illinois. The Lucases tendered fees to SDS, and SDS has been negotiating with the Lucases' creditors in an attempt to reduce the Lucases' debt. SDS's services have included arranging for payment of the Lucases' debt. A copy of the Lucas Agreement is attached to this order as Exhibit 1.

10.     The SDS website states that SDS offers a "debt mediation program." A copy of a page from the SDS website is attached as Exhibit 2.

11.     Since June 13, 2006, at the latest, SDS has been engaged in debt management services as defined by Section 2 of the DMSA.

12.     The Lucas Agreement provides for an open-ended compensation structure that sets no dollar limits on either the monthly or total fees, which is a violation of Sec. 12 of the DMSA.

NOW THEREFORE IT IS HEREBY ORDERED:

1.      SDS shall immediately **CEASE AND DESIST** from (a) offering debt management services to Illinois residents, (b) accepting fees in excess of those allowed by the DMSA, (c) and entering into new debt settlement agreements with Illinois residents. This cease and desist order takes effect upon completion of service of the Order.

2.      SDS is ordered to **PRODUCE DOCUMENTS** to the Department consisting of any and all debt management service contracts with Illinois consumers since January 1, 2005. The documents shall be produced by February 15, 2008, and delivered to the Consumer Credit Supervisor at the Illinois Department of Financial and Professional Regulation – Division of Financial Institutions, 122 S. Michigan Ave. – 19th Floor, Chicago, Illinois 60603.

3.      SDS shall pay a **FINE** of $120,000, apportioned as follows:

        a.      Five thousand dollars ($5,000) per month for engaging in the business of debt management service without a license since, at the latest, June 13, 2006, in violation of Sec. 3 of the DMSA, for a total fine of $100,000 (20 months at $5,000 per month);

        b.      Twenty thousand dollars ($20,000) for establishing a fee structure that violates Sec. 12 of the DMSA.

The fine shall be due on February 15, 2008, payable to the Illinois Department of Financial and Professional Regulation, Attn: Consumer Credit Supervisor, 122 S. Michigan Ave. – 19th Floor, Chicago, Illinois 60603.

PLAINTIFF'S
EXHIBIT F
Page 3 of 9

4.    SDS shall pay **RESTITUTION** to the Illinois consumer named in the Agreement attached as Exhibit 1, of all compensation, fees or charges received by SDS in excess of those allowed by Sec. 12 of the DMSA. The restitution payment shall be due on February 15, 2008, made by money order, payable to the consumer, and delivered to the Consumer Credit Supervisor at the Illinois Department of Financial and Professional Regulation – Division of Financial Institutions, 122 S. Michigan Ave. – 19th Floor, Chicago, Illinois 60603.

Pursuant to Section 20(c) of the DMSA, service by certified mail shall be deemed complete when the notice is deposited in the U.S. Mail. Pursuant to Section 9(d) of the DMSA, SDS may request, in writing, within ten (10) days after the date of service, a hearing on the Order.

Dated this ___11th___ day of January 2008

Brent E. Adams, Acting Director
Division of Financial Institutions
Department of Financial & Professional Regulation

4

**PLAINTIFF'S EXHIBIT F**

Page 4 of 9



The Superior Debt Solution

## DEBT SETTLEMENT AGREEMENT

This debt settlement agreement ("Agreement") is made this ___13___ day of __June__ 200_6_ between SDS West Corporation, located at 65 Enterprise, Aliso Viejo, CA 92656, and __REDACTED__ ("Client"). The parties agree as follows:

1. Services.  SDS West Corporation (herein referred to as SDS) agrees to provide debt settlement and restructure services to Client under the terms and conditions of this Agreement (the "Service"). This Service consists of negotiating with creditors on behalf of Client for reduction of unsecured debt and formulation of a payment plan. SDS will use its best efforts to settle the Program Debt, as defined below. SDS will timely respond to all Client inquiries. SDS will keep confidential and not disclose to any third party the personal financial information provided by Client.

On acceptance of Client into the program, SDS will provide a "Welcome Packet" containing a Schedule of Program Debt, a Payment Schedule, a Fund Transfer Schedule, along with further information about the program.

2. Client Obligations.  Client accepts the following obligations:

(a) Client shall inform SDS of any additional debtor, co-signer or guarantor of any of Program Debt. Client is responsible for notifying such additional debtor, co-signer or guarantor.

(b) Client will provide a written list of all unsecured debts that he or she wants SDS to settle and restructure. SDS has the right in its sole discretion to exclude certain debts, and will consult with Client to develop a mutually agreeable list of debts (the "Program Debt"). A Schedule of Program Debt is incorporated into this contract by reference. This Schedule will contain the name of the creditor, account number and outstanding balance. Debts added to the Program Debt after signing this Agreement will be subject to additional fees. All information provided by Client must be truthful and accurate. SDS is under no obligation to verify information supplied by Client, but may do so at its sole discretion;

(c) Client will forward all correspondence from creditors to SDS, including collection letters. If creditors telephone Client, Client will refer them to SDS. Client will not discuss his or her financial situation with creditors or discuss settlement. If the creditor continues to make contact, Client will contact SDS and provide creditor's name, telephone number and name of contact person;

(d) Client will timely respond to all calls and requests for documentation from SDS and will promptly advise SDS of any change in address or telephone number;

(e) Client will follow the terms of the 'Funds Transfer Schedule' setting aside funds required for fees, settlement reserves and NoteWorld trust account maintenance. All monies authorized will be drafted by NoteWorld. Of the fees drafted 15% will go towards program debt fees. Approximately 40%-53% of those funds will go towards settlement reserves. The remaining funds are itemized fees for services provided by SDS and a monthly maintenance fee for your trust account. The number of months that funds are to be set aside and the amount to be set aside each month will be determined by SDS from the information contained on the Schedule of Program Debt. The Payment Schedule, which documents the results, is incorporated into this Agreement by reference. The monies set aside are to be used for Program Debt payment until the Program Debt is settled or upon termination.

(f) Client shall make no further charges to any account listed on the Schedule of Program Debt. Client will not continue to incur debt or open new charge accounts, except that Client may retain and use one charge card for emergency purposes only. Client will immediately inform SDS of such emergency use. This account shall not be included in the SDS program.

(g) Client will not refinance any real or personal property, except for the sole purposes of lowering interest rate or obtaining funds to settle a debt. Client will inform SDS of his or her intent to refinance prior to doing so.

EXHIBIT
1

PLAINTIFF'S
EXHIBIT F
Page 5 of 9



**The Superior Debt Solution**

3. **Compensation.** In consideration for the Service provided by SDS West, Client shall pay to SDS West a Service Fee equal to 15% of the Program Debt. Approximately 5% to 15% of the estimated settlement amount, including the Service Fee will be paid upon acceptance into the program. The percentage varies based on types of creditors enrolled into the program and is in accordance with the payment schedule provided. All Service Fees owed to SDS West will be paid as defined in the Payment Schedule. Client agrees that he or she will not make or request changes to the Funds Transfer Schedule for the first 90 days following commencement of Client's participation in the program or the first three payments, whichever comes first. Client shall not instruct the bank holding any account from which NoteWorld is authorized to withdraw funds to refuse payment or to demand reimbursement without the express written concurrence of SDS West. Any such instruction is a material breach of this agreement and is grounds for immediate termination. The Payment Schedule will specify the amount of the monthly service fees in SDS West, settlement reserves and trust account maintenance payment. Client authorizes NoteWorld to initiate debit of Client's checking or savings account, in accordance with the Electronic Payment Authorization, for the payment of the Service Fees, Settlement reserves and Trust account maintenance. The Electronic Payment Authorization is incorporated by reference into this Agreement. Once the fee is paid, it is not refundable. SDS West will accept no more than two insufficient funds (NSFs) or payment reschedules in any 12-month period after the first 90 days; excessive NSFs or payment reschedules are grounds for termination. There is a minimum of $25 fee for each NSF and/or payment bank charge fees for NSF. There is also a $25 fee for payment reschedule. No payment reschedule shall be authorized within 5 days of the payment date. If a client removes an account from the program before fees are paid in full, 7% of the fee for the account removed will be credited to Clients remaining program fees. If Client removes an account after fees have been paid in full, no credit will be applied.

4. **Settlement Process.** At such time as SDS has received the first payment, SDS will commence the Service. SDS will advise Client of all good faith offers made by creditors and debt collectors, and of their acceptance of any offers made by SDS. SDS will not settle any account without the approval of Client, who has absolute discretion to accept or reject any settlement offer. On Client's approval of the settlement of a particular creditor account, SDS will notify NoteWorld to issue either an overnight check to creditor or a wire transfer from your NoteWorld Trust account. For each transaction, NoteWorld will charge a $15 fee to process payment.

**Term Settlements.** SDS may negotiate what is known as a term settlement on your behalf. This is a settlement in which we negotiate a lower percentage than what is owed and make payment arrangements with your creditor over time. Once this is negotiated and arrangements are made with your creditor SDS considers this account settled. We will take no further action with this creditor on your behalf. If you fail to meet the conditions of this settlement SDS will assume no responsibility or liability for your failure to comply with the terms of the settlement agreement. We have fulfilled our obligation by negotiating a settlement on your account and you are now responsible for meeting the terms of that settlement.

   (a) In the event Client comes into a lump sum of money and wishes to settle all accounts before designated completion date, Client must pay the SDS fee along with the lump sum when settling the accounts.

   (b) In the event a settlement offer is reached and client does not have required reserves available (as per Funds Transfer Schedule) one warning will be given. If for a second time Client does not have required reserves available, the settlement of an account client may be cancelled from the program due to breach of contract, NO service fees will be refunded.

5. **Monthly Summary of Account.** SDS will provide Client with a monthly summary to inform Client of the status of Client's account. Client has the choice to receive the monthly summary online or through the mail.

6. **Term.** This Agreement will terminate when each of the credit accounts representing the Program Debt is satisfied or upon termination by either party as provided below.

7. **ACKNOWLEDGMENTS AND DISCLAIMERS.** Client acknowledges and agrees that:

   (a) The outcome of the negotiation Service SDS provides to Client is uncertain and cannot be guaranteed. Client understands that each situation is unique and that results will vary.

PLAINTIFF'S
EXHIBIT F
Page 6 of 9

JUL-18-2007 WED 10:34 AM    IL ATTORNEY GENERAL    FAX NO. 2177821097    P. 04

06/13/2006  10:55     9492892095          SDS WEST                 PAGE  11



**The Superior Debt Solution**

(b) Balance Transfers, cash advances and accounts that are in summons or judgement status will settle at higher percentages.

(c) The performance of the Service will have an adverse effect on Client's credit rating and SDS is not responsible for the actions of the creditors in response to settlement efforts.

(d) The Service does not include the modification, correction or improvement of Client's credit reports. SDS cannot guarantee how national credit reporting agencies will report a settlement. Upon settlement of an account, SDS will send proof of settlement to Client, who may forward it to credit reporting agencies.

(e) In the event a creditor or debt collector pursues legal remedies against Client, neither this Agreement nor the Service includes legal representation. In the event SDS elects to provide legal representation or other assistance, such representation or assistance will be provided through an outside source.

(f) SDS will retain legal counsel in the performance of the Service, but such counsel represents SDS and not the individual client.

(g) Neither this Agreement nor the Service includes any tax representation, such as audit and verification, debt retirement, or Internal Revenue Service tax negotiation.

(h) The discharge of indebtedness may be considered taxable income; Client should seek the advice of a tax professional.

8. Termination. Either party may terminate this Agreement upon 5 days written notice to the other party. SDS may immediately terminate this Agreement if Client fails to timely return documents, fails to timely respond to SDS or fails to set aside money in accordance with the Fund Transfer Schedule. There is a $75.00 processing fee for cancellations after 5 days and prior to the date of first payment.

9. Arbitration. All disputes or claims between the parties related to this Agreement shall be submitted to binding arbitration in accordance with the rules of American Arbitration Association within 30 days from the dispute date or claim. Any arbitration proceedings brought by Client shall take place in Orange County, California. Judgment upon the decision of the arbitrator may be entered into any court having jurisdiction thereof. The prevailing party in any action or proceeding related to this Agreement shall be entitled to recover reasonable legal fees and costs, including attorney's fees which may be incurred.

10. Choice of Law. The laws of the State of California will govern this agreement without regard to the conflict of laws provisions thereof.

11. Integration. This Agreement and the Schedule are the complete and exclusive statement of the agreement and supersedes any proposal, prior agreement, oral or written, and any other communications relating to the settlement of debt.

12. Amendment. This Agreement may not be changed, amended, terminated, rescinded or discharged, except by a writing document executed by the parties hereto, except as provided in Paragraph 3 above relating to NSFs and reschedules, and no waiver of any of the provisions or conditions of this Agreement or any of the rights of a party hereto shall be effective or binding unless such waiver shall be in writing and signed by the party claimed to have given such waiver.

(a) Severability. If any of the above provisions are held to be invalid or unenforceable, the remaining provisions will not be affected.

Client Name (Print): ▮▮▮▮▮▮▮▮▮▮▮▮▮        Client Signature: _____  **REDACTED**

                                         Date: _6- 13 - 06_

Spouse Name (Print) ▮▮▮▮▮▮▮▮              Spouse Signature: __/      **REDACTED**

                                         Date: _6-13-06_

PLAINTIFF'S
EXHIBIT F
Page 7 of 9

☑ 009/010



**SDS WEST CORPORATION**

The Superior Debt Solution

August 30, 2007

HOME | CREDIT | FREE REVIEW | FAQ | CONTACT | MORE INFO

EXISTING CLIENTS
→ CLICK HERE!

# WELCOME TO SDS WEST CORPORATION

**Eliminate late fees.... Eliminate collection calls.... Eliminate your debt!**

Pay as little as 50% of what you owe and become debt-free in as little as 3 years.

Our debt mediation program can help you pay less and become debt-free fast, find out for yourself.

Click here for a free debt review.

### Approved Affiliates









SDS West is an associate member of (TASC) The Association of Settlement Companies. This trade association has developed a standardized industry disclosure for consumers.



EXHIBIT
2

http://www.sdswest.com/index.asp

8/30/2007

Page 1 of 2

PLAINTIFF'S
EXHIBIT F
Page 8 of 9

## CERTIFICATE OF SERVICE

I, Susan J. Gold, Acting Deputy General Counsel of the Illinois Department of Financial and Professional Regulation, hereby certify that on January *11*, 2008, I caused a true copy of the foregoing Final Order to be served on the party named below, by causing the same to be sent via certified mail to the following:

SDS West Corporation
65 Enterprise
Aliso Viejo, CA 92656

William R. Mitchell
Berger Kahn
2 Park Plaza – 6th Floor
Irvine, CA 92614

Bruce Hood, Registered Agent
820 Alabama St.
Huntington Beach, CA 92688

Susan J. Gold

5

PLAINTIFF'S
EXHIBIT F
Page 9 of 9