# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | NO. 09-3128 |
| SDS WEST CORPORATION, et al., | ) ) ) | |
| Defendants. | ) ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Defendants removed this case to federal court based on diversity jurisdiction.

Plaintiff moves for remand, arguing that diversity jurisdiction is lacking because the State of Illinois is the real party in interest.

This Court's recent ruling in *Illinois v. LiveDeal, Inc.*, 2009 WL 383434 (C.D. Ill. Feb. 12, 2009) controls.

Motion to remand is allowed.

Costs and fees awarded to the State.

I.

Invoking Illinois' Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA"), 815 ILCS 505/1 *et seq.*, the Attorney General for the State of Illinois brought this action against two California companies and several of their officers and directors (collectively, "Defendants"). The suit was initially filed in the Illinois Circuit Court of the Seventh Judicial Circuit, Sangamon County, but was removed to federal court on diversity grounds.

The Complaint alleges that the Defendants offered and performed debt settlement and mediation services for Illinois consumers. Defendants allegedly violated the ICFDBPA by, *inter alia*, making false or misleading statements and failing to clearly and conspicuously provide certain information. The Attorney General seeks an injunction and civil penalties, as well as restitution and rescission for injured Illinois consumers.

II.

"A defendant has the right to remove a case from state to federal court when the federal court could exercise jurisdiction in the first instance."

*Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510 (7th Cir. 2006) (citing 28 U.S.C. § 1441)). The removal statute is narrowly construed, *Wirtz Corp. v. United Distillers & Vintners N. Am., Inc.*, 224 F.3d 708, 715-16 (7th Cir. 2000), and the burden of establishing that removal is proper rests with the proponent of federal jurisdiction, *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000). "Any doubt regarding jurisdiction should be resolved in favor of the states." *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) (citing *Jones v. Gen. Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976)).

Defendants allege that diversity jurisdiction provides a source of original jurisdiction. Diversity jurisdiction over civil actions requires both complete diversity and a controversy exceeding $75,000. 28 U.S.C. § 1332. The parties dispute the former requirement.

As relevant here, diversity exists where parties are "citizens of different States." 28 U.S.C. § 1332(d). In this case, the individual and corporate defendants are citizens of California. *See Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 267 (7th Cir. 2006) ("all [corporations] are

citizens both of the state of incorporation and the state in which the corporation has its principal place of business"). The State of Illinois, however, is not a "citizen" for diversity purposes. *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 109 (7th Cir. 1983) (citing *Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482 (1891). Thus, if Illinois is the real party in interest, diversity jurisdiction is lacking.

To determine who the real party in interest is, courts look to the "essential nature and effect of the proceeding." *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 250 (7th Cir. 1981). This typically involves an analysis of the relief sought and a determination of who will benefit. *See Missouri, Kansas, & Texas Railway Co. v. Hickman*, 183 U.S. 53, 59-61 (1901) (focusing on relief).

Defendants raise two arguments suggesting that Illinois is not the real party in interest: (1) Illinois lacks a quasi-sovereign interest and (2) by wearing "two-hats" (seeking state and individual relief) Illinois is no longer the real party in interest. Neither argument is convincing.

4

A.

Defendants assert that the Attorney General is merely a nominal party because Illinois lacks a quasi-sovereign interest in this case. A quasi-sovereign interest is "an interest apart from the interests of particular private parties." *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1992). In order to have *parens patriae* standing, a state must articulate a quasi-sovereign interest. *Id.* Correspondingly, a state without a quasi-sovereign interest (or other type of interest) would only be a nominal party, *id.*, and not the real party in interest.[1]

Illinois seeks to exclude a company engaged in allegedly fraudulent activities from soliciting business within its domain. This implicates a well-established quasi-sovereign interest: securing an honest marketplace. *Hood ex rel. Mississippi v. Microsoft Corp.*, 428 F. Supp. 2d 537, 545 (S.D. Miss.

---

[1]It is unclear which argument (standing or real party in interest), Defendants are making. Either way, the result is the same. *See State of New York by Abrams v. Gen. Motors Corp.*, 547 F. Supp. 703, 706 n.5 (S.D.N.Y. 1982) (rejecting, as untenable, argument that state had a quasi-sovereign interest sufficient for *parens patriae* standing but lacked a real interest in the controversy). The Court also notes that the relevance of ICFDPA's express standing provision, 815 ILCS 505/7, has been largely ignored.

2006); *Wisconsin v. Abbott Labs.*, 341 F. Supp. 2d 1057, 1062-63 (W.D. Wis. 2004); *Kelley v. Carr*, 442 F. Supp. 346, 356-57 (W.D. Mich. 1997), *aff'd in part and rev'd in part*, 691 F.2d 800 ("Surely some of the most basic of a state's quasi-sovereign interests include maintenance of the integrity of markets and exchanges operating within its boundaries, protection of its citizens from fraudulent and deceptive practices, support for the general welfare of its residents and its economy, and prevention of its citizens' revenues from being wrongfully extracted from the state."); *State of Mo. ex rel. Webster v. Freedom Fin. Corp.*, 727 F. Supp. 1313, 1317 (W.D. Mo. 1989); *State of Me. v. Data Gen. Corp.*, 697 F. Supp. 23, 25 (D. Me. 1988); *State of Me. v. First Jersey Sec., Inc.*, 655 F. Supp. 1370, 1370 n.1 (D. Me. 1987); *State of New York by Abrams v. Gen. Motors Corp.*, 547 F. Supp. 703, 705-06 (S.D.N.Y. 1982) ("The State's goal of securing an honest marketplace in which to transact business is a quasi-sovereign interest."); *State of La. ex rel. Ieyoub v. Borden, Inc.*, 1995 WL 59548, *2 (E.D. La. Feb. 10, 1995).

Of course, for an interest to be "quasi-sovereign," it must generally

relate to a "substantial segment of the population." *Snapp*, 458 U.S. at 607. Defendants contend that such is not the case here, since only 250 Illinois consumers were directly injured. But they miscalculate. *Snapp* requires that "the indirect effects of the injury must be considered as well in determining whether the State has alleged injury to a sufficiently substantial segment of its population. *Id.*; *see also People by Vacco v. Mid Hudson Med. Group, P.C.*, 877 F. Supp. 143, 148 (S.D.N.Y. 1995) (noting that "the raw number of individuals directly involved" was not determinative of whether a substantial segment of the population was injured). Although the number of persons directly harmed may be small relative to Illinois' population, the indirect benefits of barring unscrupulous companies from soliciting further business accrues to the population at large. Indeed, that is why securing an honest marketplace is a quasi-sovereign interest.

Thus, Illinois has a quasi-sovereign interest in this litigation.[2]

---

[2]Defendants claim that *People ex rel. Hartigan v. Commonwealth Mortgage Corp. of America*, 723 F. Supp. 1258 (N.D. Ill. 1989) suggests possible *Snapp*-related infirmities relating to the ICFDBPA. The reverse is true: the court found that possible *Snapp* problems under the Uniform Deceptive

7

**B.**

But Defendants also assert that Illinois, even though it has an interest in vindicating its quasi-sovereign interests, is not the real party in interest because it also seeks rescission and restitution on behalf of individuals. Defendants are correct that the state is wearing "two hats": it seeks broad prospective relief on behalf of all of its citizens while at the same time demanding specific relief for a subset of citizens on related claims. Such "two hat" cases inevitably engender two related arguments.

The first argument is that *Missouri, Kansas, & Texas Railway Co. v. Hickman*, 183 U.S. 53 (1901) precludes remand in such situations. In *LiveDeal*, this Court summarized the case as follows:

> In *Hickman*, the Court asked whether a state was the real party

---

Trade Practices Act posed *Snapp* difficulties that were *alleviated* by the Attorney General's statutory authority to bring suit under the ICFDBPA. *Id.* at 1259 n.1. Defendants also suggest that the Seventh Circuit found a lack of standing under the ICFDBPA in *People of the State of Illinois v. Life of Mid-America Insurance Co.*, 805 F.2d 763 (7th Cir. 1986). That case, however, only addressed *parens patriae* standing under RICO; the ICFDBPA count was merely a pendent action that was not separately analyzed. *Id.* Also, that case noted the importance of *statutory* authorization for a *parens patriae* action, *id.* at 766-67, something that RICO lacks but the ICFDBPA expressly provides, 815 ILCS 505/7.

> in interest when it brought a suit against a railway company that refused to comply with the orders of a state board of railroad commissioners. [*Hickman*, 183 U.S.] at 54-60. In answering this question, the Court observed that "it may fairly be held that the state is such a real party when the relief sought is that which inures *to it alone*, and in its favor the judgment or decree, if for the plaintiff, will effectively operate." *Id.* at 59 (emphasis added). In the suit before it, the Court concluded that the State was not the real party in interest because the case was "not an action to recover any money for the state" and the suit's "results will not inure to the benefit of the state as a state in any degree." *Id.*

*LiveDeal*, 2009 WL 383434, *2.

Defendants zero in on the phrase "inures to it alone." This language, narrowly construed, suggests that *only* the state can benefit from the relief sought; otherwise, it is not the real party in interest. Such a reading, however, goes well beyond the actual facts of *Hickman*, where the state would not have benefitted "in any degree." *Hickman*, 183 U.S. at 59. Thus, district courts have largely refused to read *Hickman* as controlling in "two hat" cases (i.e., when the state is the primary beneficiary of the litigation,

9

but where others may also benefit). *People of California v. Universal Syndications, Inc.*, 2009 WL 1689651, *4 (N.D. Cal. June 16, 2009) ("[T]he implications of a literal application of *Missouri Railway* have been considered -- and rejected -- in multiple district court decisions."); *People of California v. Time Warner, Inc.*, 2008 WL 4291435, *2 (C.D. Cal. Sept. 17, 2008) ("Although the Supreme Court appeared to broadly eliminate the state as a real party in interest whenever the state alone does not inure the benefit, *Missouri Railway* has been subsequently limited and distinguished."); *People Virginia ex rel. McGraw v. Minn. Mining & Mfg. Co.*, 354 F. Supp. 2d 660, 673-74 (S.D.W. Va. 2005); *Abbott Labs.,* 341 F. Supp. 2d at 1063 ("lower courts have not strictly construed the language in *Missouri*, but instead have focused on the state's interest, monetary or otherwise, in the context of the entire case"); *West State of W. Va. v. Morgan Stanley & Co.*, 747 F. Supp. 332, 338 (S.D.W. Va. 1990) (recognizing that "[a] narrow reading of *Missouri* would suggest that the state is the real party in interest for diversity purposes only when the relief sought inures to the benefit of the state alone" but noting that cases have only required "a real

interest, pecuniary or otherwise, in the outcome of the litigation"). This Court has also agreed that the language in *Hickman* is not determinative, *LiveDeal, Inc.*, 2009 WL 383434, *2, and stands by that position.

The second recurring argument against remand in "two hat" cases is that the claims should be divided into groups based on the relief sought. Thus, the state will be the real party in interest regarding injunctive relief, civil penalties going to the state coffers, and other relief inuring to it. However, where individual relief is sought (restitution, rescission, private damages, etc.), the individuals will be the real parties in interest. The result of such an approach generally mirrors a strict application of *Hickman*: diversity will often exist despite substantial state interests because some individuals will benefit more than citizens at large.

A few courts have adopted this reasoning. *See Connecticut v. Levi Strauss & Co.*, 471 F. Supp. 363, 370-72 (D. Conn. 1979); *see also Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 429-30 (5th Cir. 2008) (separately analyzing relief sought in the context of the Class Action Fairness Act). Most have rejected it and viewed the complaint as a whole.

*See, e.g., Ohio ex rel. Dann v. Citibank (South Dakota),* N.A., 2008 WL 1990363, *3 (S.D. Ohio May 1, 2008); *Commonwealth ex rel. Stumbo v. Marathon Petroleum Co., LLC*, 2007 WL 2900461 (E.D. Ky. 2007); *Hood*, 428 F. Supp. 2d at 545-46; *Abbott Labs.*, 341 F. Supp. 2d at 1062-63. Illinois law appears to be in accord with the latter view. *See People ex rel. Hartigan v. Lann*, 225 Ill. App. 3d 236, 240-41 (1992).

This Court, too, has aligned itself with the latter camp and looked at the essential nature and effect of the complaint as a whole, rather than divvying up the complaint by the relief sought. *LiveDeal*, 2009 WL 383434, *2-3. Thus, the test is not whether the state alone will benefit, but whether the state has "'a substantial stake in the outcome of the case.'" *Abbott Labs.*, 341 F. Supp. 2d at 1061 (quoting *Morgan Stanley*, 747 F. Supp. at 337). *See also Hood*, 428 F. Supp. 2d at 545-46.

Applying that analysis here, it is clear that Illinois has a substantial stake. As in *LiveDeal*, the bulk of the relief (the injunctive relief and civil fines) inures solely to the State of Illinois (actually, to its consumers but,

12

because of quasi-sovereign interests, that is the same thing).[3]  This qualifies as a "substantial interest" sufficient to render Illinois the real party in interest regardless of its concurrent and subsidiary pursuit of relief on behalf of certain individual citizens.  *See, e.g., Hood*, 428 F. Supp. 2d at 546 ("The fact that private parties may benefit monetarily from a favorable resolution of this case does not minimize nor negate [the state's] substantial interest.")

## C.

Thus, largely for the reasons stated in *LiveDeal* (and restated above), this Court finds that Illinois is the real party in interest.  As such, diversity jurisdiction is lacking.

---

[3]Defendants try to distinguish *LiveDeal* and similar cases by suggesting that the State interest here is weaker.  In particular, they argue that the injunctive relief will fail because another Illinois agency beat the Attorney General to the punch and obtained an earlier injunction.  However, this Court need not determine whether injunctive relief will ultimately be warranted; it is enough that the Attorney General is authorized to seek this remedy and has made numerous allegations supporting its imposition.  In any event, *LiveDeal* also noted the importance of the substantial civil fines that would benefit the state treasury.  *LiveDeal*, 2009 WL 383434, *3.  Such fines are sought here and, if imposed, could easily exceed the size of the requested restitution and rescission remedies.  As such, the State is likely the prime beneficiary and therefore has a substantial interest.

### III.

The State of Illinois has also requested attorney fees pursuant to 28 U.S.C. § 1447(c).  In *LiveDeal*, this Court was hesitant to impose fees and costs.  *LiveDeal*, 2009 WL 383434, *3. Following that decision, however, it should have been crystal clear to Defendants that removal would fail.  Therefore, fees and costs are proper.

### IV.

<u>Ergo</u>, the State's motion for remand is ALLOWED.  Further, the State is entitled to costs and fees.  The State shall file a statement of its costs and fees within 10 days and Defendants will have 10 days thereafter to file objections (if any).  The clerk is directed to prepare a certified copy of this order and forward it to the clerk of the Circuit Court for the Seventh Judicial Circuit, Sangamon County, Illinois.

    IT IS SO ORDERED.

    ENTERED:                              July 29, 2009

    FOR THE COURT:              /s Judge Richard Mills
                                                    United States District Judge